ORIGINAL

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

—————————————————————x
ARIC A. STREIT and MARY STREIT as )   CIVIL ACTION NO.
Trustees for the benefit of the STREIT LIVING )
TRUST, Individually And On Behalf of All )
Others Similarly Situated, )   **CLASS ACTION COMPLAINT**
 )   **FOR VIOLATIONS OF**
Plaintiffs, )   **FEDERAL SECURITIES LAWS**
 )
v. )   **JURY TRIAL DEMANDED**
 )
UBS AG, UBS SECURITIES LLC and UBS )
FINANCIAL SERVICES, INC., )
 )
Defendants. )
—————————————————————x

1.    Plaintiffs Aric A. Streit and Mary Streit as Trustees for the benefit of the Streit

Living Trust (the "Plaintiffs") make the following allegations, except as to allegations

specifically pertaining to Plaintiffs and their counsel, based upon the investigation undertaken by

Plaintiffs' counsel, which included review and analysis of, among other things, filings with the

Securities and Exchange Commission ("SEC"), regulatory filings and reports, interviews with

purchasers of auction rate securities and former UBS employees, news releases and media

reports.    Plaintiffs believe that substantial additional evidentiary support will exist for the

allegations set forth herein after a reasonable opportunity for discovery.

### NATURE OF THE ACTION

2.    This is a federal securities class action brought on behalf of the Plaintiffs and all

other similarly situated persons or entities who purchased one or more auction rate securities

("ARS") offered for sale by UBS AG, UBS Securities LLC and UBS Financial Services, Inc.

(collectively, "Defendants" or "UBS") between June 9, 2003, and February 13, 2008 (the

"Class"), and who continued to hold said securities as of February 13, 2003, inclusive (the "Class

Period"). This action is brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as well as the Investment Advisors Act, 15 U.S.C. § 80b-1 *et seq.*

3.    Auction rate securities are municipal bonds, corporate bonds or preferred stocks with interest rate or dividend yield components that are periodically reset through "auctions," typically every 7, 14, 28, or 35 days, as determined by the prospectus for the security, with interest paid at the end of the auction period.  ARS usually have intermediate to long-term maturities, typically 20 to 30 years, or, in the case of preferred stocks, no maturity date.  Prior to the collapse of the market in February 2008, ARS generally traded at par and were callable at par on any interest payment date at the option of the issuer.  After a successful auction, new purchasers and continuing holders would receive the rate determined at auction, and sellers, who had been receiving interest payments, got back the face value of their investment.  At the end of the Class Period, the market for ARS reached an aggregate value of approximately $330 billion.

4.    The growth of the ARS market is attributable in part to Defendants' portrayal of ARS as cash equivalents (such as CDs and money market funds) suitable for risk-averse investors seeking liquidity and preservation of principal. These representations were, in fact, materially false and misleading. Defendants omitted to disclose to Class members that they were artificially maintaining the market for ARS by serving as buyers of last resort to ensure that auctions were continuously successful and, without such participation, Class members faced the risk of illiquidity and loss of principal.   Class members reasonably relied on Defendants' material misstatements in purchasing ARS and were damaged thereby.

5.    Throughout the Class Period, Defendants knew, but did not disclose, that if they ceased maintaining the ARS market by purchasing ARS for their own accounts, there was a risk that auctions would fail due to the lack of willing buyers.  Defendants knew that there was an

2

undisclosed risk that Class members would be locked into illiquid ARS holdings and suffer a loss of their principal given the inability to trade the securities for cash. In addition, throughout the Class Period, Class members should have received higher rates of return on their ARS holdings to fairly compensate them for the investment risks.

6.    As fiduciaries to Class members, Defendants owed a duty to disclose all material facts in connection with the sale of ARS and were required to adhere to the highest professional standards in recommending and selling the securities to Class members. They violated this duty by failing to disclose that the purported cash equivalency of ARS was totally dependent on UBS' and other broker/dealers' voluntarily serving as buyers of last resort at the auctions, the continuation of which activity was highly uncertain.

7.    Defendants acted intentionally or with reckless disregard for the truth in engaging in the wrongdoing described herein. Plaintiffs are informed and believe that Defendants were aware in 2005 that the "Big Four" accounting firms were advising corporate clients to cease characterizing ARS as cash equivalents on their balance sheets because of the illiquidity risk and were so advised by their own accountant, Ernst & Young, Ltd. Additionally, plaintiffs are informed and believe that Defendants knew in or before May 2006 that the SEC investigated and sanctioned fifteen other banks and broker-dealers for misconduct similar to that alleged herein, including, among other things, failing to disclose to customers their intervention in auctions to prevent the auctions from failing. Defendants knew of these developments as a result of their status as one of the largest banks and broker-dealers in the world, their participation in industry groups such as the Securities Industry and Financial Markets Association and through their accountants and auditors, among other sources.

8.     In contrast, Class members only began to learn the truth about the ARS market on February 13, 2008 when Defendants and other banks and broker-dealers stopped actively intervening in auctions and purchasing ARS for their own accounts to prevent auctions from failing. As a result, nearly *ninety percent* of all ARS auctions failed, stranding more than $300 billion in ARS for which there was no longer a market. The effect on Class members was in many cases devastating, and especially harsh on those who needed their purportedly liquid ARS for ready cash to satisfy such needs as medical expenses, tax bills, home mortgages and other pressing obligations.

9.     Not surprisingly, the recognized value of ARS plummeted with the collapse of the ARS market. On May 6, 2008, UBS AG filed a Form 6-K with the SEC, in which it stated that:

> In first quarter 2008, as a result of the general deterioration of
> credit markets and exacerbated by concerns about the financial
> status of monoline insurers, the markets for ARCs [auction rate
> certificates] and VRDOs [variable rate demand obligations] -
> particularly those ARCs backed by student loans - were severely
> disrupted, resulting in illiquidity in the majority of student loan
> ARCs and certain VRDOs. In the early part of first quarter, UBS
> built up significant inventory through its support for these markets,
> which in the case of ARCs has since been discontinued and in the
> case of VRDOs is limited. The inventory was marked down to
> account for the market's illiquidity, resulting in a loss of USD 974
> million in first quarter 2008, mainly in ARCs.

Other brokerages and corporate ARS holders announced similar write-downs.

10.     Although Defendants sustained a loss as result of the collapse of the ARS market they once supported and maintained, such loss is offset by the billions of dollars the Defendants earned (and continue to earn) from purchasers and issuers of these securities. For example, UBS and other broker-dealers are currently charging their clients fees pegged to their ARS holdings, thus reportedly earning approximately $825 million this year alone. To add insult to injury, Defendants are also earning interest on loans they made to Plaintiffs and other Class members

4

who have been unable to liquidate their ARS holdings for cash, but needed access to those funds. These loans are not only secured by the ARS holdings of these Class members, but also their other non-ARS assets. As a result, these Class members are subject to additional financial risk and damage caused by Defendants' misconduct.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act (15 U.S.C. § 78aa). The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder by the Securities Exchange Commission ("SEC") (17 C.F.R. 240.10b-5), and also the Investment Advisors Act, 15 U.S.C. § 80b-1 *et seq.*

12.    Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b), §1337. Defendants maintain two places of business within this District and do substantial business herein, and many of the acts giving rise to the violations complained of herein occurred in this District.

13.    In connection with the acts alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

14.    Aric A. Streit and Mary Streit are trustees and beneficiaries of the Streit Living Trust and authorized to bring this action on behalf of themselves and their Trust. As set forth in the accompanying certification, incorporated by reference herein, Plaintiffs purchased ARS that were marketed, sold and/or underwritten by UBS during the Class Period, and have been damaged thereby. Plaintiffs continued to hold such ARS as of February 13, 2008.

5

15.    Defendant UBS AG (the "Company") is a Swiss bank and global financial services corporation with its principal executive offices in Zurich and Basel, Switzerland. UBS AG does business and maintains offices in the United States, including two offices in New York at 299 Park Avenue, New York, NY 10171 and 1285 Avenue of the Americas, New York, NY 10019, respectively. UBS AG also does business in the United States through its wholly-owned subsidiaries UBS Securities LLC and UBS Financial Services, Inc.

16.    Defendant UBS Securities LLC ("UBS Securities") is incorporated in Delaware with its principal place of business at 677 Washington Boulevard, Stamford, CT 06901. UBS Securities is registered with the SEC as a broker-dealer pursuant to Section 15(b) of the Exchange Act and is a member of the New York Stock Exchange and the Federal Industry Regulatory Authority. UBS Securities is the investment banking division of UBS AG.

17.    Defendant UBS Financial Services, Inc. ("UBS Financial") is located at 1285 Avenue of the Americas, New York, NY 10019. UBS Financial offers individuals various financial planning and investment products. It also offers corporations services such as employee stock benefit and deferred compensation plans. UBS Financial also has access to the array of brokerage, investment banking and asset management services provided by other UBS-affiliated companies. UBS Financial is registered with the SEC as a broker-dealer and investment advisor pursuant to the Exchange Act and the Investment Advisors Act of 1940. Plaintiffs purchased ARS through UBS Financial.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

18.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure ("FRCP") 23(a) and (b)(3) on behalf of a Class consisting of all persons and entities who purchased ARS from or through UBS between June 9, 2003 and February 13, 2008, inclusive and continued to hold them through the end of the Class Period. Excluded from the

6

Class are the Defendants herein, officers and directors of any Defendant, members of any of the Defendants' immediate families, or any of their legal representatives, heirs, successors or assigns, and any entity in which any Defendant has or had a controlling interest.

19.     The members of the Class are so numerous that joinder of all members is impracticable. The market for ARS is estimated at approximately $330 billion in the United States. UBS was one of the largest underwriters and broker-dealers of ARS while the market for such securities existed. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are, at a minimum, hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Defendants and may be notified of the pendency of this action by mail using a form of notice similar to that customarily used in securities class actions.

20.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are, inter alia:

(a)     Whether Defendants' actions as alleged herein violated federal securities laws and the Investment Advisors Act;

(b)     Whether statements made by or on behalf of Defendants to the investing public during the Class Period omitted and misrepresented material facts about, among other things, the extent of the Defendants' and other broker-dealers' creation of and support for the ARS market, and the liquidity of, and true risks associated with, ARS and the market for such securities; and

7

(c)     To what extent Class members have suffered damages, and the proper measure of those damages.

21.     Plaintiffs' claims are typical of those of other Class members, as all members of the Class were and are similarly affected by Defendants' wrongful conduct in violation of federal law which is complained of herein.

22.     Plaintiffs will fairly and adequately protect the interests of Class members and have retained counsel competent and experienced in class action and securities litigation.

23.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it practically impossible for Class members to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

24.     In the alternative, the Class may be certified under the provisions of FRCP 23(b)(1) and/or 23(b)(2) because: (a) the prosecution of separate actions by the individual Class members would pose the risk of inconsistent or varying adjudications with respect to individual Class members, as well as establishing incompatible standards of conduct for Defendants; (b) such separate actions by individual Class members would pose the risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members who are not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and (c) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

8

## SUBSTANTIVE ALLEGATIONS

### I. BACKGROUND

25.     Accordingly, UBS initially kept ARS out of the hands of inexperienced investors by selling them only to institutional clients from whom they required a $250,000 minimum investment. Eventually, however, UBS began marketing ARS to the general public and lowered the minimum investment amount to $25,000 to increase sales. UBS did not typically provide these customers with prospectuses for ARS because the securities were considered secondary market issues rather than initial offerings. As alleged above, the securities were marketed to Class members as cash equivalents without disclosing the true nature of Defendants' manipulation of the ARS market and the risks associated with these securities.

26.     In general, coupon-paying bonds may be "fixed-rate" or "variable-rate." Fixed-rate bonds pay coupons of the same amount every period based on one fixed rate, while variable-rate coupons vary in amount and are based on a rate that changes from one period to the next. This variable rate is typically set as a spread over some benchmark rate, for example, The London Interbank Offered Rate ("LIBOR") or the federal funds rate ("Fed Funds"). In the case of auction-rate securities, this variable rate is periodically re-determined through modified "Dutch auctions," as further alleged below. In other words, the auction is an alternative mechanism for resetting the coupon rate or dividend on the bond or preferred stock.

27.     ARS are auctioned at par and are remarketed by one or more broker-dealers. The underwriter receives a fee based on a percentage of principal of securities sold, typically 25 basis points. Auctions are generally held every 7, 28, 35, or 49 days, but there is rarely a resale market outside the periodic auctions. After a successful auction, new purchasers and continuing holders receive the rate determined at auction, and sellers, who have been receiving interest payments,

get back the face value of their investment. If the auctions are continuously successful, ARS share characteristics with short-term, liquid securities.

28.     ARS carry upfront fees associated with a fixed-rate bond issuance, along with ongoing maintenance fees. The industry standard is $5 per bond for the initial placement fee plus annual fees of 25 basis points for broker-dealer fees and 1 to 2 basis points for auction agent fees. Credit risk associated with ARS mirror those of other municipal and corporate issues in terms of default risk associated with the issuer. Because they do not carry a "put" feature (which allows the bondholder to require the purchase of the bonds by the issuer or by a specified third party), ARS are very sensitive to changes in credit ratings and normally require the highest ratings to make them marketable. This is usually achieved with bond insurance. While bond insurance protects the holder against default by the issuer, the insurance does not cover the risk of illiquidity resulting from failed auctions. Thus, the high credit rating and insurance features of ARS issues bolstered the false appearance that ARS were safe investments when, in fact, the illiquidity and other risks remained undisclosed.

29.     Prior to a typical ARS auction, broker-dealers survey investor interest and give guidance to potential investors called "price talk." This is the range of rates within which the broker-dealer believes the auction is likely, though not guaranteed, to clear. The broker-dealer may consider factors such as prevailing market conditions and clearing rates for recent auctions of comparable securities. Current holders may sell, continue to hold at any clearing rate, or indicate that they wish to hold only if the clearing rate is at or above a particular level. Interested buyers submit purchase bids, and sellers submit sale bids. In summary, there are four types of bids:

10

Buy - The potential investor's bid includes a given rate and a quantity it will buy if the clearing rate is equal to or greater than this given rate;

Hold - The current holder will continue to hold a given quantity at any clearing rate;

Hold-at-Rate - The current holder will continue to hold a given quantity if the clearing rate is equal to or greater than the given rate, otherwise it will sell at the clearing rate;

Sell - The current holder will sell a given quantity at any clearing rate.

If an existing holder does not submit a bid, most auction procedures treat this as a hold bid.

30.     Bids are submitted to broker-dealers, who collect the information and pass it on to the "auction agent" by a particular deadline. Some broker-dealers allow bid submission right up until their own deadline with the auction agent, and some have an earlier internal deadline to allow time for processing. The auction agent determines if bids are such that the auction will succeed, i.e., if there is enough buyer demand to cover seller supply. Then the auction agent determines the clearing rate. Bids for each broker-dealer are then filled, sometimes on a pro rata basis, generally with settlement on the next business day. Broker-dealers in turn fill bids for their individual clients. Hold bids are filled first, followed by hold-at-rate and buy bids below the clearing rate, followed by hold-at-rate bids at the clearing rate, and finally, buy bids at the clearing rate. Hold-at-rate and buy bids above the clearing rate are not filled.

31.     An "all-hold" auction occurs if all ARS holders determine to hold their ARS without specifying a minimum rate. In this instance, the rate is set at a below market rate as defined in the prospectus for the security, and is termed the "All Hold Rate." The All Hold Rate is typically set based on a percentage of LIBOR, Fed Funds or another benchmark rate..

11

32. Failed auctions occur when there are insufficient orders to purchase all the securities. At that point interest is reset to a "maximum rate" applicable to the specific securities being auctioned, as set forth in the prospectus. This rate is also often a specified fixed percentage, and based on one of the particular benchmark rates set forth above. When an auction fails, none of the current holders can sell their shares or otherwise exit their positions through the auction. The maximum rate is insufficient to compensate current holders for the loss of liquidity and in many instances, such as student loan ARS and auction preferreds of closed-end funds, the increases in interest, if any, are tiny adjustments of perhaps 20 or 30 basis points.

33. Because Defendants intervened in the ARS market to prevent auctions from failing without alerting Class members to their manipulation, Class members had no reason to disbelieve Defendants representations that ARS were liquid, cash equivalents. But liquidity features of traditional money market securities such as commercial paper, negotiable certificates of deposits, agency discount notes, short corporate bonds and asset backed securities differ greatly from ARS. For example, investors in the aforementioned securities can reach out to multiple dealers (typically five or more) to solicit bids from each dealer to ensure best execution. By contrast, investors in ARS hold an illiquid security often dependent on a single broker-dealer structure where the same broker underwrites, runs, and sells the majority of the auction, significantly concentrating risk and investment bias. The collective pool of money earned for selling ARS and managing each auction created a unique incentive for Defendants (and other broker-dealers) to market these securities rather than other capital preservation tools. Defendants' financial incentive to market ARS and the distinctions between ARS and other short-term, capital preservation investments were concealed from unsuspecting Class members in Defendants' rush to sell them ARS.

12

## II.   UBS REGULARLY MADE MATERIAL OMISSIONS AND MISREPRESENTATIONS CONCERNING THE NATURE AND RISKS OF ARS INVESTMENTS, AS WELL AS THE CONDUCT OF THE BROKER-DEALERS IN ARTIFICIALLY CREATING AND SUSTAINING THE ARS MARKET

### A.   UBS's Use Of A Uniform And Standardized Sales Pitch To Market And Sell ARS

34.   UBS directed its sales force to sell ARS through a uniform, standardized sales pitch that was false and misleading because it omitted to disclose and misrepresented material facts as alleged herein. To the extent, documents were disseminated to Class members, they, too, were materially false and misleading in similar respects.

#### 1.   The True But Undisclosed Nature Of The Auction Process And the ARS Market

35.   On February 28, 2008, "Market Pipeline" published an article headlined "Auction Rate Securities: Manipulated from the get-go" in which traders reportedly stated that "the failed auction rate securities market was always dependent on stabilization by dealers." While the Market Pipeline article recognized that the term "stabilization" had a specific technical definition as used by the SEC, whether "the market manipulation by the dealers f[ell] within SEC guidelines" was doubtful, considering that "[t]he immediate cause of the auction failures was the pullback of the banks and brokerages. In mid-February the financial institutions conducting the auctions stopped acting as principals or buyers of excess ARS inventory . .." The article further stated that:

> "Wall Street executives have defended their conduct, saying losses on holdings such as mortgage assets have curtailed their ability to use their balance sheets to support faltering markets," the Wall Street Journal's Randall Smith and Liz Rappaport report in their article today about a large bond marketer lashing out against Wall Street over the auction failures.
>
> *But this raises the question of why the markets were faltering in the first place.* In our earlier reporting, we revealed how accounting changes may have set some corporate buyers running

13

> for the exits from this market. ***More recent conversations with a broader array of bond traders and dealers points toward another possibility—the market never had enough buyer demand to support itself and has been dependent on stabilization from the banks for a very long time.***
>
> ***"The truth is there was no natural auction success rate. But for the banks acting as market makers, these auctions would have failed from the get go,"*** [stated one] bond trader . . .
>
> ***Rather than merely acting as buyers of the last resort, the financial institutions have been consistently called upon to stabilize the ARS market. In many cases, investors were led to believe the market was much healthier than it has ever been.*** [Emphasis added].

36. A September 29, 2006 speech to the Tenth Annual Conference of Women in Public Finance by Martha Mahan Haines, the Chief of the SEC's Office of Municipal Securities, also confirms UBS's failure to adequately disclose the true nature of the ARS market to ARS investors such as the Plaintiffs and other Class members. As Ms. Mahan Haines recognized, "it appears that the way rates are actually set on auction rate securities often may bear little resemblance to the way the process was described in offering statements." Ms. Mahan Haines also stated, *inter alia*, that:

> ***It is true that, due in large part to [broker-dealer] intervention, there have been few "failed" auctions, resulting in windfall interest rates for investors until the next auction, or "all hold" auctions, resulting in below market rates briefly benefiting issuers.*** Broker-dealers also intervened when the rate that would be set was not, in that broker-dealer's opinion, an appropriate market rate. (But wasn't a determination of the market rate the very purpose of an auction?) We are told that this is in the best interests of both issuers and investors. But is it? ***The true liquidity risk, volatility and fragmented nature of this market was not made clear to issuers or investors.*** Furthermore, broker-dealer intervention does not necessarily set the rate at the same point as would be set in a successful multi-bidder auction. ***This intervention supported the rapid growth of this market to over $200 billion. Was it in the best interests of issuers and investors to be so heavily dependent on broker-dealer intervention to support the expansion of that market?***

14

\*  \*  \*

*To simply say that a Broker-Dealer may submit orders in Auctions for its own account, in which case it might have an advantage over other bidders because it would have knowledge of other orders placed through it for that Auction just does not give an accurate picture of the reality of how this market functions. Disclosure should make it clear that broker-dealers commonly intervene in auctions,* . . . I would suggest that as part of your own due diligence investigation, you should ask for *information regarding the frequency of broker-dealer bidding . . . Do not dance around this issue: describe what really happens flat out.*

\*  \*  \*

Perhaps consideration should be given to a different name for this type of security or of the process by which rates are set? "Managed auction process" and "bidding system" have been suggested to me. . . . I recognize that "BS Securities" is not an appealing acronym and I leave it to those more creative than me to come up with an alternative title.

\*  \*  \*

You have all heard me talk about the importance of market integrity and investor confidence before. *I suggest that the lack of transparency regarding the actual rates set in these auctions undermines both. Market participants should insist that the rates set in these auctions and other critical information be made public.* You have all heard the remark by Justice Brandeis to the effect that sunlight is the best disinfectant. The former head of investment banking at one firm put it this way: "We believe everybody is honest, but they are more honest if you watch them like a hawk." *Giving investors, potential investors, issuers and broker-dealers a way to monitor the rates, the bidding ranges and number of bids received, would allow them to see inside the black box of this market. Disclosure of such information, which is routine in Treasury auctions, would promote market integrity, enhance investor confidence and improve pricing efficiency.* Transparency would benefit everyone. [Emphasis added].

37.     According to an article recently appearing in the New York Times entitled "It's a

Long, Cold, Cashless Siege for Investors" on April 13, 2008, as the ARS market became much

larger, "it became harder for Wall Street to arrange true auctions regularly" and so these

15

"auctions" devolved into what one industry observer termed a "managed bidding system," but a system which was hidden from investors by the materially misleading omissions and misrepresentations made by UBS and the other broker-dealers.

38.    According to that New York Times report, Joseph S. Fichera of Saber Partners observed that "[a]uction securities became a managed bidding, not a true investor auction" and that "investors never knew how many investors there were, how often the brokerage firms were stepping in to make the system work, *nor that the broker' support could stop all of a sudden*. If we had transparency in the system, investors could have judged the ability to sell in the individual auctions and bid accordingly." [Emphasis added.]

## 2.    UBS's Standardized And Uniform Deceptive Sales Pitch And Document Disclosures

39.    UBS developed and implemented a uniform and standardized sales pitch, which was presented to Plaintiffs and the other Class members by UBS financial advisors, that falsely represented that ARS were liquid, cash equivalents, suitable alternatives to money market funds or CDs, and safe and secure vehicles for short-term investing. UBS financial advisors pitched ARS accordingly throughout the United States. One Financial Advisor, who worked for UBS from 2005-2007 and whose branch manager discussed the advantages of ARS with him and explained why he should pitch them to clients, stated that his office pitched ARS as short-term 7-day commercial paper that was a cash equivalent. This former financial advisor stated that:

> The ARS were an alternative to someone who was sitting on the fence about doing something at UBS and a way to lock the customer in for seven days or so, before we made a decision to do another investment. The client was told it was a safe, liquid investment; a place to park money short term that offered an attractive yield until something better came along. It was seven day commercial paper in essence.

Similarly, a former UBS Financial Advisor from 2002 to 2006 stated that his boss would solicit ARS investments and tell customers that they are cash equivalents to money markets with accelerated rates of return.

40.     In furtherance of their scheme, UBS regularly classified ARS on client monthly account statements as "cash alternatives," thereby falsely representing that the level of risk involved in purchasing ARS was essentially similar to cash equivalent investments such as money market funds.

41.     In such communications, UBS failed to disclose material facts about ARS and the ARS market to investors, including information concerning the risks associated with, and high potential for illiquidity of, these investments. UBS failed to disclose, among other things, that:

- ARS were not cash equivalents or suitable alternatives, like money market accounts or CDs, or short term investments; and

- ARS liquidity was in fact highly uncertain, because the ARS market never had enough independent buyer demand or participation to support itself and depended upon UBS (and other broker-dealers in the ARS market) to create artificial demand. Consequently, if and when the ARS became too risky or it was no longer in UBS's self-interest to continue to buy and hold large investments in ARS, UBS could stop purchasing them, thereby, leaving investors holding the bag (i.e., ARS for which there was no market).

42.     As alleged above, PwC issued an advisory in February 2005 which called for ARS to be classified as short-term securities rather than the cash equivalent classification enjoyed by corporations that used them to manage their cash. PwC's rationale was that the legal maturity of ARS was typically 20 to 30 years, despite the auction mechanism, and that the auction liquidity was provided by third parties not factored into the ARS credit ratings. Plainly put, ARS are not cash equivalents because they are dependent on third-party demand. The other "Big Four" accounting firms (including UBS's auditor, Ernst & Young, Ltd.) followed this approach and began requiring clients to reclassify ARS holdings. At their March 21, 2007

17

meeting, the Financial Accounting Standards Board ("FASB") announced its intention to eliminate the classification of "cash equivalent," for ARS and that the securities should be classified as "short term investments".

43.     Corporate holders reacted to these changes by exiting ARS investments *en masse*, to avoid having to drastically reduce balance sheet cash positions as a result of the FASB directive.  At the close of 2006, corporations owned eighty percent of all ARS issues; as of July 1, 2007, corporate ownership had dropped to "$170 billion of these securities, or just over half of the total outstanding"; and "through the second half of 2007, corporate investors were dumping their stakes," cutting their aggregate holdings to only $98 billion, or less than 30%, out of a total $330 billion market, according to *The New York Times* (April 13, 2008). "[A] number of corporations understood there was a rising threat to their securities; there had been failures and warnings," the Times article stated.

44.     In spite of their duty of candor as fiduciaries. Defendants did not inform Class members about the increasing risk of failed auctions and illiquidity due to the downturn in corporate America's appetite for these securities. Instead, to shore up demand, Defendants and other broker-dealers escalated their sales efforts to the general public and unsuspecting Class members.

45.     Defendants' scienter is further demonstrated by their alleged knowledge of the SEC's investigation into auction manipulation and inadequate disclosure by banks and broker-dealers engaged in the ARS market. After an investigation, beginning in 2004, of underwriting practices and the auction process, the SEC issued cease and desist orders and settled with fifteen banks and broker-dealers for a collective $13.375 million in May 2006. The SEC's order identified several "volatile practices," including, *inter alia*, (i) manipulating the flow of

18

information about prices and interest and the allocation of securities to the advantage of certain investors over others, (ii) bidding to prevent auction failures without disclosing their actions to customers, (iii) manipulating bids so that auctions cleared at rates considered to be appropriate market rates and to prevent "all-hold" auctions, (iv) changing or prioritizing customers' bids to increase the likelihood that the bids would be filled and submitting and revising bids after the auction deadline. In January 2007, three additional broker-dealers reached a $1.6 million settlement with the SEC based on similar charges. Additionally, in May 2007. the SEC fined Citigroup Global Markets, as successor by merger to Legg Mason Wood Walker, $200,000 for "interven[ing] in auctions by bidding for its proprietary account to prevent failed auctions without adequate disclosure... LMWW submitted bids to ensure that all of the securities would be purchased to avoid failed auctions and thereby, in certain instances, affected the clearing rate."

46.    Defendants' aggressively marketed ARS as liquid and safe investment to unsuspecting Class members without making full or adequate disclosure of their conduct with respect to ARS auctions in spite of their knowledge that concealing and misrepresenting such conduct was fraudulent. A graphic example of Defendant's scienter and wrongdoing is shown by the circumstances of UBS customer Marilyn Gales. Unaware of the FASB report, SEC proceedings or the position adopted by the Big Four accounting firms, she invested all or a portion of her life savings in ARS on February 11, 2008 after a UBS broker pitched these securities as AAA rated, liquid, safe cash equivalents. The ARS market collapsed just three days later. When Mrs. Gales called her UBS broker after the collapse, the broker stated that he was not aware of the risks and was "only following orders."

19

**B.     The Collapse Of The ARS Market**

47.     During the summer of 2007, approximately 2 to 6 percent of ARS auctions, apparently involving ARS backed by sub-prime debt, failed.   The rate of auction failures increased throughout the end of 2007.   Some of these auctions were operated and managed by UBS, but Defendants continued to maintain that investors should purchase ARS as liquid, cash equivalents,  suitable for conservative, short-term investing, without disclosing the severe risks associated with these securities.  UBS and other broker-dealers were fully aware (or at the very least recklessly ignorant) of, the deteriorating condition of the ARS market, and the high likelihood of a total collapse.  By abruptly withdrawing their support for the ARS market, Defendants and other broker-dealers sought to limit their financial risk at the expense of investors, including Class members..

48.     On February 13, 2008, a stunning 87% of all ARS auctions suddenly failed when UBS and all of the other major broker-dealers refused to continue to prop up the auctions.  The following day the financial press reported that UBS was refusing to support the auction market any longer.  Other major broker-dealers (including Citigroup, Goldman Sachs, Lehman Brothers and Merrill Lynch, among others), decided virtually simultaneously, to overwhelmingly, if not totally, cease participation in or support of the ARS market and these auctions.  Consequently, the entire ARS market, totaling approximately $330 million, shut down virtually instantaneously and completely, with ARS investments becoming illiquid almost overnight.

49.     According to the April 13, 2008 New York Times report, the ARS market shut-down was preceded by the broader credit crisis at UBS and other big brokerage houses.  As a result of the credit crunch, they became unwilling to put up the substantial capital from their reserves needed to keep the ARS auctions running.  For example, on October 1, 2007, the

20

Company announced that it was forced to take a write down of positions in fixed income, rates and currencies which were mainly related to the deteriorating conditions in the U.S. sub-prime residential mortgage market. Due to this write-down, UBS announced on that date that it was likely to record an overall Group pre-tax loss between CHF 600 million and CHF 800 million for the third quarter 2007, ended September 30.

50.    The market-wide credit crisis, which began in approximately the first half of 2007, put pressure on UBS and the other brokerages' balance sheets, and in turn caused the Defendants to cease committing the substantial capital necessary to artificially prop up the ARS market, until finally virtually all broker-dealer support for the ARS market vanished, causing the market to collapse.

51.    The collapse of the ARS market had a significant negative impact on the recognized value of these securities. UBS announced in a May 6, 2008 6-K that its inventory of ARS and variable rate demand obligations were marked down to account for the market's illiquidity, resulting in a loss to the Company of $974 million in the first quarter of 2008, mainly in ARS. Other corporate holders of these securities followed suit, for example with Palm taking a write-down of $25.5 million in ARS and a "reclassification" of these securities as illiquid, and Imclone Systems, Inc., reportedly writing down their portfolio of these securities by $84.9 million. Since February 13, 2008, a very limited secondary market has developed in which ARS are trading at deep discounts below their face value.

52.    While the market for ARS has collapsed, UBS and other broker-dealers nevertheless continue to improperly make money from the investors to whom they sold ARS in connection with these investments. For instance even under these circumstances, as investors are unable tap their money, with a collapsed market and ineffective auctions, UBS and other

21

brokerage firms continue to earn the same fees -- approximately 0.25 percent of the amount of the shares or notes outstanding on an annual basis, repeatedly generating aggregate fees of approximately $825 million this year alone -- despite that fact that few auctions are currently succeeding. UBS and other broker-dealers are further victimizing investors by requiring those who need current access to cash to borrow against the value of their ARS holdings, sometimes up to the full par amounts, and then charging them interest on these loans.

53.     Defendants' conduct and materially false and misleading statements and omissions during the Class Period caused ARS to be marketed and sold and traded by UBS at artificially inflated prices. Plaintiffs and other Class members purchased ARS marketed and sold by UBS in reliance upon the integrity of the auction market and of the market price of the ARS, and have suffered damage thereby. Moreover, when Plaintiffs and other Class members refrained from selling their ARS on those securities' reset dates, they did so in reliance upon Defendants' continued material misrepresentations and omissions, and suffered damage thereby.

54.     Defendants materially misled public investors and artificially created and enabled the perpetuation of the ARS market, thereby inflating the price of ARS marketed and sold by UBS while underpaying Class members a fair return on the investments given the undisclosed risks.     Defendants accomplished this by making materially false and misleading public statements and failing to disclose material facts necessary to render Defendants' statements, as set forth herein, not false and misleading. As a result, Defendants created an unrealistically positive assessment of, and artificial demand for, the ARS they underwrote, marketed and sold, and thereby caused those securities to be overvalued and artificially inflated at all relevant times.

## NO SAFE HARBOR

55.     The federal statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this

22

complaint. Nor were the forward-looking statements, if any, pleaded herein accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from the statements made therein. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those statements was made, the defendant responsible for the statement knew it was false and misleading, and/or the forward-looking statement was authorized and/or approved by a director and/or an executive officer of UBS who knew that it was false when made.

## LOSS CAUSATION/ECONOMIC LOSS

56. At all relevant times, the material misrepresentations and omissions particularized in this complaint, and the ultimate disclosures thereof, directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiffs and other members of the Class.

57. During the Class Period, Defendants engaged in a scheme and course of conduct to create, prop up, perpetuate and manipulate for their own benefit an artificial market for ARS, and to artificially inflate the price of ARS marketed and sold by UBS. This course of conduct operated as a fraud or deceit on purchasers of these securities by, *inter alia*, omitting to disclose material risks concerning the liquidity of ARS. Such risks included factors that made them very different from cash equivalent investments, including, but not limited to, the overwhelming, if not total, dependence of the ARS market on the willingness of UBS and other broker-dealers to continue to create an artificial demand in order to sustain the ARS market and keep auctions from failing. Defendants made materially false and misleading statements about the nature and characteristics of the ARS market, the ARS themselves, and the auctions at which they were traded and sold. The purported value of the ARS were artificially inflated by this deception.

58.     Among after things. the interest rates on ARS were much lower than the rate the market would have put on them had the investing public been widely aware that these investments were not truly cash equivalents or suitable alternatives to investments such as CDs or money market funds, or fully understood the liquidity risks involved, and the artificial and unreliable nature of the demand created and sustained by the broker-dealers. Given the higher interest rate that would have resulted from full disclosure, buyers would have been able to acquire a lower face amount of ARS while still obtaining the same dollar amount of interest they received on the ARS actually purchased. Defendants' material misrepresentations and omissions were disclosed and became known to the investing public when the ARS market collapsed, and the securities themselves became illiquid. Defendants' (and other broker-dealers') decisions to cease artificially creating and sustaining the ARS market -- a process that had been fraudulently concealed from the Class -- caused the dramatic collapse of the ARS market and also finally began to reveal the nature and extent of Defendants' massive fraud in connection with the marketing and sale of ARS. As a result, the perceived values of ARS have declined substantially. For example, as alleged herein, UBS, and other broker-dealers have begun writing down the value of ARS to reflect the fact they were actually worth materially less than their face amount.

## APPLICABILITY OF PRESUMPTION OF RELIANCE

### A.     UBS's Use Of A Uniform And Standardized Sales Pitch Containing Materially Misleading Omissions

59.     A presumption of reliance is applicable here due to UBS's use of a uniform and standardized sales pitches containing materially misleading omissions regarding, *inter alia*, the true nature of ARS investments, the risks of illiquidity of the ARS market and UBS's (and other broker-dealers') virtual wholesale creation and sustenance of that market.

60.     Here, UBS brokers were required to and did use uniform, standardized, and materially identical sales pitch created and/or approved by UBS senior management to market and sell ARS to unsuspecting Class members such as the Plaintiffs herein. The sale pitch did not vary appreciably, if at all, among Class members, and uniformly omitted material facts concerning, among other things, the true nature of ARS investments, the true extent and nature of the illiquidity risks of investments in ARS and the fact that without the routine and constant involvement by Defendants and other broker-dealers in propping up the ARS market, the market and auctions could not provide continuing liquidity for the securities.

61.     In light of Defendants' knowledge that their sales force was routinely representing to investors that ARS were liquid and cash equivalents, and suitable alternatives to money market funds and CDs, it was materially misleading for Defendants to fail to correct the record and state expressly that ARS were, among other things, in fact not liquid or cash equivalents, or suitable money market, CD or similar cash preservation alternatives.

62.     As set forth herein, Plaintiffs and the other Class members would not have invested in ARS, or, alternatively, would not have purchased their ARS investments on the terms at which they actually did so, had the Defendants' material omissions not concealed the true nature of the ARS investments and the risks related thereto. Plaintiffs' and the other Class members' fraud-based claims stem largely if not entirely from misleading material omissions, for which reliance may be presumed.

## B.     Fraud-On-The-Market Doctrine

63.     The ARS market (on which UBS and other broker-dealers marketed and sold ARS), until the truth came out and prior to its collapse, was at all relevant times hereto open, well-developed and efficient.

25

64.     Plaintiffs rely, in part, upon the presumption of reliance established by the fraud-

on-the-market doctrine in that, among other things:

    (a)     Defendants made false and misleading public misrepresentations
and failed to disclose adverse facts during the Class Period;

    (b)     The omissions and misrepresentations were material;

    (c)     ARS traded in an efficient market;

    (d)     The misrepresentations alleged would tend to induce a reasonable
investor to misjudge, among other things, the value of the securities at issue; and

    (e)     Plaintiffs and the other members of the Class purchased ARS
between the time Defendants failed to disclose and misrepresented material facts
and the time the true facts were disclosed, without knowledge of the omitted or
misrepresented facts.

65.     The market for ARS digested current information regarding these securities and

reflected such information in the prices of ARS.  As would be expected where a security is

traded in an efficient market, material news concerning ARS had a prompt and immediate effect

on the market price of these securities, as evidenced by, among other things, the rapid decline in

the market price occurring after the seizure of the ARS markets in mid-February, 2008, as

described herein.  Under these circumstances, all purchasers of ARS from UBS (not to mention

from other broker-dealers) during the Class Period suffered similar injury due to the fact that the

price of those securities was artificially inflated throughout the Class Period.  At the times they

purchased or otherwise acquired these ARS, Plaintiffs and other Class members were without

knowledge of the facts concerning the wrongful conduct alleged herein and could not reasonably

have discovered those facts.  As a result, the presumption of reliance applies.

26

## COUNT I

### Violations Of Section 10(b) Of The Exchange Act
### Against All Defendants

66.     Plaintiffs repeat and reallege each and every allegation set forth in the paragraphs above as if fully set forth herein. Plaintiffs bring this cause of action on behalf of themselves and the Class.

67.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did, among other things: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; (ii) enable Defendants to sell hundreds of millions, if not billions, of dollars of ARS to current and prospective UBS clients, and on which UBS collected many millions of dollars in fees and commissions; and (iii) cause Plaintiffs and other Class members to purchase ARS from UBS at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, jointly and individually (and each of them) took the actions set forth herein.

68.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business and conduct which operated as a fraud and deceit upon the purchasers of ARS from UBS in an effort to maintain artificially high sales and market prices for such securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants herein are sued either as primary participants in the wrongful and illegal conduct charged herein, or as controlling persons as alleged below.

69.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

27

continuous course of conduct to conceal material adverse information about the ARS sold by UBS, as specified herein.

70.     These Defendants engaged in the scheme and conduct alleged herein, including using devices, schemes and artifices to defraud, while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors that the ARS being marketed and sold by UBS were as good as cash or were cash equivalents, similar to money market funds or CDs, and were liquid and safe investments, suitable for short-term investing and for investors with as little as $25,000 of available cash and/or as little as one week in which to invest. Defendants' conduct, which involved and included the making of, or the participation and acquiescence in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about the ARS and that ARS market, in the light of the circumstances under which they were made, not false and misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business and conduct which operated as a fraud and deceit upon the purchasers of ARS from UBS during the Class Period, *i.e.*, the Class members.

71.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with deliberate and reckless disregard for the truth in that they failed to ascertain and to disclose such facts which were fully accessible to them. Such Defendants' material misrepresentations and/or omissions were done knowingly and/or deliberately and recklessly and for the purpose and effect of concealing the truth about the liquidity of and other risks associated with ARS from the investing public and supporting the artificially inflated price and market for these securities. If Defendants did not have actual

28

knowledge of the misrepresentations and omissions alleged, they were deliberate and reckless in failing to obtain such knowledge by refraining from taking those steps necessary to discover whether those statements were false or misleading.

72.     At all relevant times, the senior management and/or directors of UBS knew and/or recklessly disregarded that the ARS continued liquidity depended on the purely voluntary willingness of UBS and the other major broker-dealers to serve as buyers of ARS in order to create and sustain the market demand necessary to keep the ARS market alive, and to keep the auctions from failing. Defendants knew this fact because UBS itself was a prominent participant in (and often a manager or agent of) the auctions, but knowingly or recklessly failed to disclose this material information to Plaintiffs and the class members.

73.     Moreover, upon information and belief, even while ARS were being aggressively marketed to individual investors by UBS in 2007, Defendants knew that the corporate clients of UBS and other broker-dealers were fleeing the ARS market in droves, having apparently become concerned that ARS were not cash equivalents. As Defendants also knew, major accounting firms (upon information and belief, including their own auditor, Ernst & Young, Ltd.) advised their corporate clients several years ago to change the way ARS were treated on their balance sheets, and to stop classifying them as "cash equivalents." Upon information and belief, those in executive management positions at UBS were monitoring events in the marketplace with respect to ARS as part of their responsibilities to their shareholders and their company, and were thus privy to facts and information which indicated that ARS were becoming increasingly risky and would become virtually completely illiquid if UBS and the other major broker-dealers decided not to continue their artificial support of the ARS market. UBS's own balance sheet problems were recognized within UBS as a reason why it was undesirable for Defendants to keep

acquiring ARS and participating in and supporting the ARS market to prevent failed auctions. Other major broker-dealers that were also supporting the ARS auctions, such as Merrill Lynch, Citigroup, and others, also had serious balance sheet problems. At the same time, Defendants were unloading these securities on unsuspecting individual clients, at times from their own inventory, using a uniform and misleading sales pitch that they were, *inter alia*, liquid, cash equivalents, and suitable alternatives to money market funds, CDs, or similar cash preservation investments, and appropriate for very short-term investors..

74.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market and market price of the ARS marketed and sold by UBS was artificially inflated during the Class Period. In ignorance of the fact that the market prices of ARS were artificially inflated, and relying directly or indirectly upon the integrity of the auction market in which the ARS were traded, or on the materially false and misleading statements made by Defendants, and/or the absence of material adverse information that was known to or deliberately disregarded, omitted or concealed by Defendants and not disclosed by Defendants during the Class Period, Plaintiffs and the other members of the Class acquired ARS marketed and sold by UBS during the Class Period at artificially inflated prices and/or for unduly low interest rates and were damaged thereby.

75.    At the time of said misrepresentations and omissions, Plaintiffs and other Class members were ignorant of their falsity, and believed them to be true. Had Plaintiffs and the other members of the Class and the marketplace known the truth regarding the nature of these investments, including, among other things, the illiquidity of and other risks associated with the ARS marketed and sold by UBS, as outlined herein, but which were not disclosed by Defendants, Plaintiffs and other members of the Class would not have purchased their ARS, or,

30

if they had acquired such securities during the Class Period, they would not have paid the artificially inflated prices which they paid for these securities and would have demanded greater rates of return given the undisclosed investment risks. Moreover, Defendants' continued misrepresentations and omissions misled Plaintiffs and other Class Members into refraining from selling their ARS on those securities' reset dates.

76.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

77.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other Class members suffered damages in connection with their respective purchases of ARS marketed and/or sold by UBS during the Class Period.

## COUNT II

### Violation Of Section 20(a) Of The Exchange Act
### Against Defendants UBS AG

78.     Plaintiffs repeat and reallege each and every allegation set forth in the paragraphs above as if fully set forth herein. Plaintiff brings this cause of action on behalf of itself and the Class.

79.     Defendant UBS AG acted as a control person of Defendants UBS Securities and UBS Financial, within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of its 100% ownership and control of these subsidiaries, UBS AG had the power to influence and control and did influence and control, directly and indirectly, the decision-making by these subsidiaries, including the content and dissemination of the various statements which Plaintiffs contend are false and misleading, and the omission of certain material facts and information concerning ARS and the ARS market necessary to make any such statements or representations not materially false and misleading. UBS AG, its principals, and these

31

subsidiaries, were provided with or had unlimited access to copies of the reports, press releases, public filings, client statements, and other materials and information alleged by Plaintiffs herein to be misleading prior to and/or shortly after these statements were issued, and also had the ability to prevent the issuance of these materials, or to cause them to be corrected.

80.     As set forth above, UBS AG violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, these entities are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchase and retention of ARS from UBS AG during the Class Period.

## COUNT III

## Violations of the Investment Advisers Act (IAA) of 1940, 15 U.S.C. § 80b-1, *et seq.* Against All Defendants

81.     Plaintiffs repeat and reallege the allegations as set forth above as if set forth fully herein.

82.     Defendant UBS and/or its subsidiaries and affiliates listed herein are investment advisers under the Investment Advisers Act, 15 U.S.C. § 80b-1 *et seq.*, who entered into express brokerage contracts with Plaintiffs and other Class members. Defendants engage, for compensation, in the business of advising Plaintiffs and other members of the Class, either directly or through publications or writings, as to the value of "securities" or as to the advisability of investing in, purchasing, or selling "securities" as defined at 15 U.S.C. § 80b-2(11). The creation, maintenance and provision of a market for ARS was not incidental to the conduct of Defendants' usual brokerage business, and UBS receives and has received special compensation therefore.

32

83.     By reason of the conduct set forth herein, and the above-described omissions,

concealment and misrepresentation of material facts, Defendants acted in violation of 15 U.S.C.

§ 80b-6, Prohibited transactions by investment advisers, which provides that

> It shall be unlawful for any investment adviser, by use of the mails
> or any means or instrumentality of interstate commerce, directly or
> indirectly--
>
> (1) to employ any device, scheme, or artifice to defraud any
> client or prospective client;
>
> (2) to engage in any transaction, practice, or course of business
> which operates as a fraud or deceit upon any client or prospective
> client;
>
> (3) acting as principal for his own account, knowingly to sell any
> security to or purchase any security from a client, or acting as
> broker for a person other than such client, knowingly to effect any
> sale or purchase of any security for the account of such client,
> without disclosing to such client in writing before the completion
> of such transaction the capacity in which he is acting and obtaining
> the consent of the client to such transaction. The prohibitions of
> this paragraph (3) shall not apply to any transaction with a
> customer of a broker or dealer if such broker or dealer is not acting
> as an investment adviser in relation to such transaction;
>
> (4) to engage in any act, practice, or course of business which is
> fraudulent, deceptive, or manipulative. The Commission shall, for
> the purposes of this paragraph (4) by rules and regulations define,
> and prescribe means reasonably designed to prevent, such acts,
> practices, and courses of business as are fraudulent, deceptive, or
> manipulative.

84.     Moreover, under the IAA, Defendants, as investment advisers, owed to Plaintiffs

and other members of the Class a fiduciary duty to fully and fairly disclose to all material facts

and information, and an affirmative obligation to employ reasonable care to avoid misleading

their clients.

85.     In breach of their fiduciary duties to Plaintiffs and other members of the Class and

in violation of the IAA, Defendants made the herein described omissions, concealment and

33

misrepresentation of material facts and information concerning their actions as "Financial Advisors" to customers in connection with ARS, thereby deceiving Plaintiffs and other members of the Class with full knowledge that their conduct was false and misleading due to material omissions and/or misrepresentations.

86.    As a result of these breaches of fiduciary duties. Plaintiffs and other Class members' purchases, investments and/or acquisitions of ARS arc void under Section 15 of the IAA. 15 U.S.C. § 80b-15(b), which provides:

> Every contract made in violation of any provision of this title and every contract heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of any provision of this title, or any rule, regulation, or order thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, regulation, or order, shall have made or engaged in the performance of any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of which the making or performance of such contract was in violation of any such provision.

87.    Further, Defendants acquired rights under and were benefited by these acts and conduct as set forth above and had actual knowledge of the conduct engaged in that violated the IAA.

88.    In addition to seeking a declaratory judgment that the ARS transactions with Plaintiffs and the Class are null and void, Plaintiffs seek rescission and an accounting and restitution for the benefit of all Class members who request rescission returning all monies and fees wrongfully obtained by Defendants, as well as disgorgement of all profits made by the Defendants due to their conduct in violation of the IAA.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for relief and judgment, as follows:

34

A.     Determining that this action is a proper class action, designating Plaintiffs as Lead Plaintiffs and certifying Plaintiffs as Class Representative under FRCP 23 and Plaintiffs' counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of Plaintiffs and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding those class members who purchased ARS from UBS the option of rescinding their purchases and recovering the full amount paid plus interest thereon;

D.     Declaring that all amounts received by UBS from or related to the marketing or sale of ARS to Plaintiffs and the Class members, and all proceeds thereof, are held as a constructive trust by UBS for the benefit of Plaintiffs and the Class members herein;

E.     Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

F.     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder; and

G.     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: June 9, 2008

Respectfully submitted,

**MILBERG LLP**

By:  _____

Jerome M. Congress (JC-2060)
Lori G. Feldman (LF-3478)
Kent A. Bronson (KB-4906)

One Pennsylvania Plaza
New York, NY 10119
(212) 594-5300
jcongress@milberg.com
kbronson@milberg.com

**MILBERG LLP**
Jeff Westerman (JW-6500)
One California Plaza300 South Grand Avenue,
Suite 3900
Los Angeles, CA 90071-3172
(213) 617-1200
jwesterman@milberg.com

**LAW OFFICES OF GEORGE A. SHOHET**
George A. Shohet  (Pro Hac Vice Admission
Pending)
245 Main Street, Suite 310
Venice, CA 90291
(310) 452-3176
georgeshohet@gmail.com

*Counsel for Aric A. Streit and Mary Streit as
Trustees for the benefit of the Streit Living Trust
And The Proposed Class*

## CERTIFICATION OF PLAINTIFF

Mary Streit and Aric A. Streit, as Trustees for the benefit of the Streit Living Trust, each do hereby certify that:

1. I reviewed the Complaint I am filing and authorize Milberg LLP and Law Offices of George A. Shohet, A Professional Corporation, to act on my behalf in this matter in applying for Lead Plaintiff status and for all other purposes.

2. I did not acquire the securities that are the subject of this action at the direction of plaintiffs' counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. I am willing to serve as a representative party who acts on behalf of a class in directing and supervising the action, either individually or as part of a group, including as a Lead Plaintiff, a named plaintiff, and/or as a class representative, and I understand that my duties as such may include, among other things, providing testimony at deposition and trial, if necessary.

4. I represent and warrant that I am authorized to execute this Certification on behalf of the purchasers of the subject securities described herein (including, as the case may be, myself, any co-owners, any corporations or other entities, and/or any beneficial owners).

5. I will not accept any payments for serving as a representative party on behalf of the class beyond the purchaser's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

6. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is unaffected by my decision to serve as a representative party.

7. I list below all of my transactions in Auction Rate Securities purchased through UBS AG, UBS Securities LLC and UBS Financial Services Inc. ("UBS") during the Class Period set forth in the Complaint. In addition, I list the margin loans I obtained from UBS which are secured in part by the Auction Rate Securities in my UBS accounts. I also list my transactions involving UBS during the Class Period in which Auction Rate Securities purchased through the Banc of America were transferred to my UBS accounts and thereafter were partially sold:

| Description | Transaction | Transaction Date | Price |
|---|---|---|---|
| See Attached Schedule A | | | |
| | | | |

These securities were acquired or held in (check all that apply):

X  General (non-retirement account)     ❑ Merger/acquisition/distribution     ❑ Gift
❑ IRA                                    ❑ Employer-sponsored plan (401k, 403b, etc.)

8. During the three years prior to the date of this Certification, I have not sought to serve and I have not served as a representative party for a class in an action filed under the federal securities laws except as described below (if any):

I declare under penalty of perjury, under the laws of the United States, that the information entered is accurate.

Executed this $\underline{\quad 6^{th} \quad}$ day of June, 2008

_Mary Streit_

Signature -    Mary Streit
               Trustee for the benefit of the
               Streit Living Trust

Signature:    Aric A. Streit
              Trustee for the benefit of the
              Streit Living Trust

**MARY AND ARIC STREIT**

**THE STREIT LIVING TRUST**

**SCHEDULE A**

**PURCHASES:**

| SECURITY | CUSIP | TRADE DATE | TOTAL FACE VALUE |
|---|---|---|---|
| LIVERMORE CLAIF MULTIFAMILY REV FNMA DUE 8/1/2018 VARIABLE 2.29% PUTABLE 7/21/2005 AT 100 | 537900AE2 | 7/14/2005 | 1,000,000.00 |
| CHELA FINL INC CALIF STUDENT LN REV DUE 6/1/2037 VARIABLE 2.35% CALLABLE-NEXT PRICING CALL | 16309MAH8 | 7/14/2005 | 1,000,000.00 |
| METROPOLITAN WTR DIST SOUTHN CALIF WTRWKS REV DATED 3/28/1996 REVENUE ANTICIPATION AMER MUNI BD ASSURANCE CORP 8/1/2005 AT 100 | 592663QV3 | 7/14/2005 | 1,000,000.00 |
| ILLINOIS FIN AUTH REV DUE 8/15/2038 VARIABLE 2.33% INSURED BY FSA 8/14/05 AT 100  DATED 5/27/2004 REVENUE ANTICIPATION CALLABLE-NEXT PRICING CALL | 45200BDR6 | 7/14/2005 | 500,000.00 |
| WESTERN MUN WTR DIST FACS AUTH CALIF REV DUE 10/1/2032 VARIABLE 2.29% INSURED BY FSA | 95874QAA3 | 7/14/2005 | 500,000.00 |
| WEST VIRGINIA ST HOSP FIN AUTH HOSP REV DUE 2/15/2034 VARIABLE 2.30% INSURED BY FSA 7/23/2005 AT 100 DATED 6/30/2004 REVENUE ANTICIPATION CALLABLE-NEXT PRICING CALL | 956622VX9 | 7/18/2005 | 550,000.00 |
| JEFFERSON CNTY KY HEALTH FACS REV DUE 3/1/2032 VARIABLE 2.35% INSURED BY CALLABLE NEXT PRICING CALL | 472902JQ9 | 7/18/2005 | 500,000.00 |
| 9/1/2025 VARIABLE 2.36% INSURED BY CALLABLE NEXT PRICING CALL DATED 12/19/1995 REVENUE ANTICIPATION AMER MUNI BD ASSURANCE CORP 9/1/2005 AT 100 | 546395ZA5 | 7/18/2005 | 500,000.00 |
| NEW JERSEY ECONOMIC DEV AUTH REV DUE 5/1/2019 VARIABLE 2.20% INSURED BY FSA 7/21/2005 AT 100 | 645916VV6 | 7/18/2005 | 500,000.00 |
| NEW JERSEY ST TPK AUTH TPK REV DUE 1/1/2024 VARIABLE 2.20% INSURED BY CALLABLE-NEXT PRICING CALL | 646139WN1 | 7/18/2005 | 500,000.00 |

*Asterisk denoted Banc of America transactions.

| | | | |
|---|---|---|---|
| SAINT JOSEPH MICH HOSP FIN AUTH HOSP REV DUE 1/1/2032 VARIABLE 2.50% INSURED BY FSA 8/18/2005 AT 100 | 790678BZ8 | 7/18/2005 | 500,000.00 |
| NEW JERSEY HEALTH CARE FACS FING AUTH REV DUE 1/1/2035 VARIABLE 2.30% INSURED BY CALLABLE-NEXT PRICING CALL | 64579FCV3 | 7/18/2005 | 225,000.00 |
| NEW YORK NY CITY TRAN AUTH MET TRANSN AUTH TRIBOROUGH DUE 1/1/2030 VARIABLE 2.25% INSURED BY CALLABLE-NEXT PRICING CALL | 649713CJ1 | 7/21/2005 | 500,000.00 |
| SYS REV DATED 5/8/2003 REVENUE ANTICIPATION MBIA INSURANCE CORP 8/13/05 AT 100 DUE 7/1/2032 VARIABLE 2.30% INSURED BY CALLABLE-NEXT PRICING CALL | 438701CN2 | 7/21/2005 | 200,000.00 |
| COLORADO HEALTH FACS AUTH REV DUE 12/1/2025 VARIABLE 2.05% INSURED BY CALLABLE-NEXT PRICING CALL | 196474PS3 | 7/26/2005 | 500,000.00 |
| NEW JERSEY ST HSG & MTG FIN AGY MULT-FAMILY REV DATED 2/10/05 FGIC 8/27/2005 AT 100 | 646108AC4 | 7/27/2005 | 500,000.00 |
| CALIFORNIA HELATH FACS FING AUTH REV DUE 7/1/2017 VARIABLE 2.00% INSURED BY CALLABLE-NEXT PRICING CALL | 13033ABQ3 | 7/27/2005 | 100,000.00 |
| CEDAR RAPIDS IOWA HOSP REV DURE 8/15/2032 VARIABLE 2.37% INSURED BY CALLABLE-NEXT PRICING CALL | 150543AA4 | 7/28/2005 | 500,000.00 |
| NEW YORK ST DORM AUTH REVS DUE 7/1/2032I VARIABLE 2.20% INSURED BY CALLABLE-NEXT PRICING CALL | 6499016V2 | 7/28/2005 | 400,000.00 |
| CALIFORNIA ST ECONOMIC RECOVERY DUE 7/1/2023 VARIABLE 2.26% INSURED BY CALLABLE NEXT PRICING CALL PUTABLE 8/5/2005 AT 100 | 13067JFA4 | 7/29/2005 | 1,000,000.00 |
| CALIFORNIA HELATH FACS FING AUTH REV DUE 7/1/2020 VARIABLE 2.03% INSURED BY CALLABLE-NEXT PRICING CALL PUTABLE 8/10/2005 AT 100 | 13033HXN1 | 7/29/2005 | 300,000.00 |
| WESTERN MUN WTR DIST FACS AUTH CALIF REV DUE 10/1/2032 VARIABLE 2.26% INSURED BY FSA | 95874QAA3 | 8/1/2005 | 500,000.00 |
| HUNTINGTON BEACH CALIF UN HIGH SCH DIST CTFS PARTN DATED 10/23/2003 GENERAL OBLIGATION INSURED BY PUTABLE 8/8/2005 AT 100 | 446231AN2 | 8/1/2005 | 300,000.00 |

| | | | |
|---|---|---|---|
| EASTERN MUN WTR DIST CALIF WTR & SWR REV CTFS PARTN DATED 5/26/1993 REVENUE ANTICIPATION CALLABLE-NEXT PRICING CALL PUTABLE 8/8/2005 AT 100 | 276771CEO | 8/1/2005 | 295,000.00 |
| MOORPARK CLAIF UNI SCH DIST CTFS PARTN DUE 11/1/2028 VARIABLE 2.26% INSURED BY FSA 9/3/2005 AT 100 | 616261AT0 | 8/3/2005 | 600,000.00 |
| RANCHO CALIF WTR DIST FING AUTH REV DUE 8/1/2029 VARIABLE 1.97% INSURED BY FGIC 9/1/2005 AT 100 | 752111EW0 | 8/3/2005 | 365,000.00 |
| CALIFORNIA HELATH FACS FING AUTH REV DUE 7/1/2020 VARIABLE 2.03% INSURED BY CALLABLE-NEXT PRICING CALL PUTABLE 8/10/2005 AT 100 | 13033HXN1 | 8/3/2005 | 100,000.00 |
| OAKLAND CALIF JT PWRS FING AUTH LEASE REV DUE 8/1/2026 VARIABLE 2.20% INSURED BY CALLABLE-NEXT PRICING CALL | 67227WBV6 | 8/3/2005 | 50,000.00 |
| CALIFORNIA HELATH FACS FING AUTH REV DUE 7/1/2016 VARIABLE 2.03% INSURED BY CALLABLE-NEXT PRICING CALL PUTABLE 8/11/2005 AT 100 | 13033HXM3 | 8/4/2005 | 400,000.00 |
| SNOWLINE CALIF JT UNI SCH DIST CTFS PARTN DUE 6/1/2039 VARIABLE 2.00% INSURED BY FSA 9/4/2005 AT 100 | 833427BS5 | 8/4/2005 | 300,000.00 |
| LOS ANGELES CNTY CALIF MET TRANSN AUTH SALES TAX REV DATED 6/30/1993 REVENUE ANTICIPATION MBIA INSUREANCE CORP 9/4/2005 AT 100 | 544712AV4 | 8/4/2005 | 295,000.00 |
| RANCHO CALIF WTR DIST FING AUTH REV DUE 8/1/2029 VARIABLE 1.97% INSURED BY FGIC 9/1/2005 AT 100 | 752111EW0 | 8/4/2005 | 280,000.00 |
| AZUSA CALIF UNI SCH DIST CTFS PARTN DUE 6/1/2038 VARIABLE 2.00% INSURED BY FSA CALLABLE-NEXT PRICING CALL PUTABLE 8/11/2005 AT 100 | 055034AE2 | 8/4/2005 | 250,000.00 |
| AZUSA CALIF UNI SCH DIST CTFS PARTN DUE 6/1/2021 VARIABLE 2.00% INSURED BY FSA CALLABLE-NEXT PRICING CALL PUTABLE 8/11/2005 AT 100 | 055034AC6 | 8/4/2005 | 200,000.00 |
| MOORPARK CLAIF UNI SCH DIST CTFS PARTN DUE 11/1/2028 VARIABLE 2.26% INSURED BY FSA 9/3/2005 AT 100 | 616261AT0 | 8/4/2005 | 200,000.00 |
| RANCHO CALIF WTR DIST FING AUTH REV DUE 8/1/2031 VARIABLE 0.00% INSURED BY FGIC | 752111EV2 | 8/4/2005 | 200,000.00 |

| | | | |
|---|---|---|---|
| SANTA CLARA CALIF ELEC REV DUE 7/1/2010 VARIABLE 2.00% INSURED BY CALLABLE-NEXT PRICING CALL PUTABLE 8/11/05 AT 100 | 801444AZ3 | 8/4/2005 | 180,000.00 |
| EASTERN MUN WTR DIST CALIF WTR & SWR REV CTFS PARTN DATED 9/25/2003 REVENUE ANTICIPATION MBIA INSURANCE CORP 8/25/2005 AT 100 | 276771FM9 | 8/4/2005 | 135,000.00 |
| CALIFORNIA HELATH FACS FING AUTH REV DUE 7/1/2009 VARIABLE 2.03% INSURED BY CALLABLE-NEXT PRICING CALL PUTABLE 8/11/2005 AT 100 | 13033HXL5 | 8/4/2005 | 100,000.00 |
| CARLSBAD CALIF UNI SCH DIST CTFS PARTN DUE 9/1/2032 VARIABLE 2.00% FSA 9/1/2005 AT 100 | 142666CG9 | 8/4/2005 | 100,000.00 |
| EASTERN MUN WTR DIST CALIF WTR & SWR REV CTFS PARTN DATED 9/25/2003 REVENUE ANTICIPATION MBIA INSURANCE CORP LLOYDS TSB BK PLC 8/25/2005 AT 100 | 276771FN71 | 8/4/2005 | 100,000.00 |
| WESTERN MUN WTR DIST FACS AUTH CALIF REV DUE 10/1/2032 VARIABLE 2.00% INSURED BY FSA | 95874QAA3 | 8/4/2005 | 100,000.00 |
| DUE 2/1/2032 VARIABLE 2.06% INSURED BY CALLABLE-NEXT PRICING CALL DATED 2/26/2002 REVENUE ANTICIPATION AMER MUNI BD ASSURANCE CORP 9/10/2005 AT 100 | 13033FJF8 | 8/10/2005 | 800,000.00 |
| CALIFORNIA ST DEPT WTR RES CENT VY PROJ REV DATED 3/18/2004 REVENUE ANTICIPATION XL CAPITAL ASSURANCE 9/9/2005 AT 100 | 13066KQW2 | 8/11/2005 | 1,000,000.00 |
| NEW HAMPSHIRE HIGHER ED LN CORP ED LN REV DUE 12/1/2033 VARIABLE 3.604% CALLABLE NEXT PRICING CALL | 644616AF1 | 9/2/2005 | 1,000,000.00 |
| MISSOURI HIGHER ED LN AUTH STUDENT LN REV DUE 2/15/2026 VARUABKE 3.70% | 606072DR4 | 9/6/2005 | 500,000.00 |
| KENTUCKY HIGHER ED STUDENT LN CORP STUDEN LN REV DATED 9/8/2005 | 49130NBC2 | 9/7/2005 | 1,000,000.00 |
| IOWA STUDENT LN LIQUIDITY CORP STUDEN LN REV DATED 9/22/1999 REVENUE ANTICIAPTION AT 100 | 462590DY3 | 9/14/2005 | 750,000.00 |
| ILLNOIS STUDENT ASSISTANCE COMMN STUDEN LN REV DATED 7/19/2005 REVENUE ANTICIPATION 10/12/2005 AT 100 | 452281HR2 | 9/16/2005 | 400,000.00 |

| | | | |
|---|---|---|---|
| CHELA FINL USA INC CALIF STUDEN LN REV ARCS-SR-SER B-2 DATED 11/21/1996 VARIABLE SUBJECT TO OPTIONAL REDEMPTION | 16309PAB4 | 9/28/2005 | 1,000,000.00 |
| INDIANA SECONDARY MKT EDL LNS INC ED LN REV CTFS-SER 2004-1 DATED 9/24/2004 REVENUE ANTICIPATION SUTDENT LOAN MARKETING ASSOC. 10/28/05 @ 100 | 454905AY6 | 9/28/2005 | 1,000,000.00 |
| PENNSYLVANIA ST HIGHER ED ASSISTANCE AGY STUDENT LN REV DATED 12/15/2000 VARIABLE | 709163CC1 | 9/28/2005 | 1,000,000.00 |
| NORTH TEX HIGHER ED AUTH INC STUDENT LN REV ARCS-CL II-SER DATED 3/12/2002 | 662826CY0 | 9/28/2005 | 350,000.00 |
| ILLINOIS STUDENT ASSISTANCE COMMN STUDENT LN REV SER I 3 DATED 08/20/2002 | 452281GS1 | 9/29/2005 | 600,000.00 |
| ARIZONA EDL LN MARKETING CORP EDL LN REV ARCS-SER A-6 DATED 5/2/2001 | 040504EB4 | 9/30/2005 | 1,000,000.00 |
| COLLEGIATE FUNDING SVCS 28DAY ARC DUE 3/1/2042 | 19458LAF7 | 9/30/2005 | 400,000.00 |
| UTAH ST BRD REGENTS STUDENT LN REV ARCS-SER AA-2CL II DATED 10/4/2005 VARIABLE 11/2/05 | 917546GD9 | 10/3/2005 | 1,000,000.00 |
| NORTHSTAR GUARANTEE INC DIVISI ON B TXBLE STUDENT LOAN ABS ADJUSTABLE RATE 3.90% REVENUE ANTICIPATION CALLABLE FIRST COUPON 12/12/2000 | 66704JAA6 | 10/7/2005 | 400,000.00 |
| MISSOURI HIGHER ED LN AUTH STUDENT LN REV ARCS-SER GG DATED 2/3/1999 VARIABLE | 606072FB7 | 11/3/2005 | 500,000.00 |
| IOWA STUDENT LN LIQUIDITY CORP STUDENT LN REV ARCS-SER Y-1 DATED 3/27/2003 | 462590FK1 | 11/3/2005 | 150,000.00 |
| ACCESS GROUP INC DEL 2003-A STUDENT LN ASSET BKD NT CL A-2 DATED 5/6/2003 | 00432CAU5 | 11/17/2005 | 1,000,000.00 |
| MISSOURI HIGHER ED LN AUTH STUDENT LN REV ARCS 2002 F COUPON VARIABLE MATURITY DATE 7/1/2032 * | 606072GS9 | 11/29/2005 | 900,000.00 |

| | | | | |
|---|---|---|---|---|
| NELNET EDUCATION LN SER 2003-1 CL A6 COUPON VARIABLE MATURITY DATE 7/1/2043 | * | 64031RAF6 | 11/29/2005 | 900,000.00 |
| UNION FINL SERVICES SER 1996-C CL A6 VAR RATE VARIABLE MATURITY DATE 7/1/2014 | * | 906619AH4 | 11/29/2005 | 900,000.00 |
| ILLNOIS STUDENT ASSISTANCE COMMN STUDENT LN REV VAR BDS ISAC SR SERIES 2003 B-2 VARIABLE MATURITY DATE 3/1/2038 | * | 452281GW2 | 11/30/2005 | 900,000.00 |
| BRAZOS STUDENT LN SER 2004-A2 MUNI AUT RATE NT STUDENT LN ASSET VARIABLE MATURITY DATE 3/1/2040 | * | 10623PCV0 | 12/2/2005 | 1,250,000.00 |
| SOUTH CAROLINA STUDEN LN CORP ED LN REV REV BDS SER A-2 VARIABLE MATURITY DATE 6/1/2033 | * | 83714RAS2 | 12/2/2005 | 1,250,000.00 |
| MISSOURI HIGHER ED LN AUTH STUDENT LN REV ARCS 2002 D VARIABLE MATURITY DATE 7/1/2032 | * | 606072GQ3 | 12/5/2005 | 800,000.00 |
| EDINVEST CO SER 2004-1 CL A1 VAR RATE VARIABLE MATURITY DATE 6/1/2040 | * | 280850AC2 | 12/14/2005 | 1,100,000.00 |
| NORTHSTAR GUARANTEE INC DIV B MINN STUDENT LN ARS BDS NORTHSTAR EDU FINANCE STUDENT LN ASSET BKD 2004 A-1 VARIABLE MATURITY DATE 12/1/2044 | * | 66704JAL2 | 12/14/2005 | 1,050,000.00 |
| MISSISSIPPI HIGHER ED ASSISTANCE CORP STUDENT LN REV ASSET BKD NT 2004 A-3 VARIABLE MATURITY DATE 9/1/2034 | * | 605354ES4 | 12/19/2005 | 1,100,000.00 |
| IOWA STUDENT LN LIQUIDITY CORP STUDENT LN REV ARCS-SER M DATED 09/22/1999 | | 462590DY3 | 2/1/2006 | 850,000.00 |
| EDUCATIONAL FDG SOUTH INC TENN EDL LN REV REV BDS 2003 B-1 | * | 28148NBM4 | 2/6/2006 | 400,000.00 |
| PANHANDLE-PLAINS TEX HIGHER ED AUTH INC STUDENT LN REV REV BDS 2004A-2 | * | 698476DS4 | 3/8/2006 | 600,000.00 |
| NEW JERSEY ST HSG & MTG FIN AGY MULTI-FAMILY HSG REV DATED 05/08/2003 | | 6461073N0 | 3/8/2006 | 450,000.00 |

| | | | | |
|---|---|---|---|---|
| SLM STUDENT LOAN TR SER 2003-2CL B VAR RATE | * | 78442GFX9 | 3/24/2006 | 300,000.00 |
| NORTH CAROLINA ST ED ASSISTANCE AUTH REV STUDENT LOAN REV BONDS 1998 F 1 | * | 658262CY4 | 3/29/2006 | 700,000.00 |
| VOLUNTEER ST STUDENT FDG CORP TENN EDL LN REV AUCTION RATE EDL LN REV BDS SR SER B | * | 928809AQ5 | 4/11/2006 | 100,000.00 |
| SLM STUDENT LN TR SER 2003-B CL A4 | * | 78443CAP9 | 4/26/2006 | 200,000.00 |
| ARIZONA EDL LN MARKETING CORP EDL LN REV ARCS-SER A-6 DATED 05/02/2001 | | 040504EB4 | 5/15/2006 | 850,000.00 |
| COLLEGIATE FNDG SVCS SER 2003-B CL A3 | * | 19458LAK6 | 5/22/2006 | 50,000.00 |
| NEW JERSEY ST HSG & MTG FIN AGY MULTI-FAMILY HSG REV DATED 05/08/2003 | | 6461073N0 | 5/30/2006 | 50,000.00 |
| FEDERATED STUDENT SER 2003-A CL A2 | * | 268440AD6 | 5/31/2006 | 1,000,000.00 |
| COLLEGIATE FDG SVCS ED LN TR 2003-A STUDENT LN ASSET BKD NT CL A6 | * | 19458LAF7 | 6/19/2006 | 50,000.00 |
| NORTH CAROLINA ST ED ASSISTANCE AUTH REV GTD STUDENT LN REV BDS 2002 L-2 | * | 658262DK3 | 6/27/2006 | 100,000.00 |
| NEW JERSEY ST HSG & MTG FIN AGY MULTI-FAMILY HSG REV DATED 05/08/2003 | | 6461073N0 | 6/28/2006 | 500,000.00 |
| SAN DIEGO CNTY CALIF PENSION OBLIG AUCTION REV BD 2002 B-3 | * | 797398BU7 | 7/12/2006 | 50,000.00 |
| ILLINOIS STUDENT ASSISTANCE COMMN STUDENT LN REV ARCS-SR DATED 12/08/2005 | | 452281HW1 | 11/21/2006 | 1,000,000.00 |

*Asterisk denoted Banc of America transactions.

7

| | | | |
|---|---|---|---|
| PENNSYLVANIA ST HIGHER ED ASSISTANCE AGY STUDENT LN REV DATED 10/19/2000 | 709163BZ1 | 11/21/2006 | 1,000,000.00 |
| IOWA STUDENT LN LIQUIDITY CORP STUDENT LN REV ARCS-SR-SER DATED 05/17/2001 | 462590EM8 | 11/21/2006 | 550,000.00 |
| KNOWLEDGE WKS FNDTN OHIO STUDENT LN REV RFDG-RAMS-SER DATED 11/29/2000 | 49924VAA9 | 12/27/2006 | 100,000.00 |
| SLMA 2003-2 A6 DUE 9/15/2028 | 78442GFT8 | 1/19/2007 | 1,000,000.00 |
| NEW HAMPSHIRE HIGHER ED LN CORP ED LN REV SR ARCS-SER A-1 DATED 04/21/1999 | 644616AF1 | 1/22/2007 | 1,000,000.00 |
| ATLANTA GA DEV AUTH REV TUFF TEPB LLC PROJ DUE 07/01/2037 | 04780NFW2 | 1/23/2007 | 825,000.00 |
| IOWA STUDENT LN LIQUIDITY CORP STUDENT LN REV ARCS-SER Y-1 DATED 03/27/2003 | 462590FK1 | 3/22/2007 | 250,000.00 |
| ATLANTA GA DEV AUTH REV TUFF TEPB LLC PROJ DUE 07/01/2037 | 04780NFW2 | 3/22/2007 | 175,000.00 |
| IOWA STUDENT LN LIQUIDITY CORP STUDENT LN REV ARCS-SER Y-1 DATED 03/27/2003 | 462590FK1 | 3/27/2007 | 400,000.00 |
| NEW JERSEY ST HSG & MTG FIN AGY MULTI-FAMILY HSG REV DATED 05/08/2003 | 6461073N0 | 4/4/2007 | 600,000.00 |
| ATLANTA GA DEV AUTH REV TUFF TEPB LLC PROJ DUE 07/01/2037 | 04780NFW2 | 4/17/2007 | 1,000,000.00 |
| INDIANA SECONDARY MKT EDL LNS INC ED LN REV CTFS-SER 2004-1 DATED 09/24/2004 | 454905AY6 | 4/30/2007 | 1,000,000.00 |
| MISSOURI HIGHER ED LN AUTH STUDENT LN REV ARC SER J DATED 06/28/2006 | 606072JG2 | 4/30/2007 | 1,000,000.00 |

| | | | | |
|---|---|---|---|---|
| CALIFORNIA INFRASTRUCTURE & ECONOMIC DEV BK REV VAR RATE REV BDS CAL INDPT SYS OPERATOR CORP 2007 SERIES A | * | 13033WXS7 | 5/11/2007 | 1,055,000.00 |
| CONNECTICUT STUDENT LN FNDTN STUDENT LN REV ARCS-SR SER A-1 DATED 07/27/2006 | | 207784AS8 | 5/30/2007 | 900,000.00 |
| CALIFORNIA INFRASTRUCTURE & ECONOMIC DEV BK REV VAR RATE REV BDS CAL INDPT SYS OPERATOR CORP 2007 SERIES A | * | 13033WXS7 | 6/27/2007 | 525,000.00 |
| LONG BEACH CALIF UNI SCH DIST CTFS PARTN VAR COPS CAP IMPT REFING 2001 | * | 542436BQ2 | 6/27/2007 | 385,000.00 |
| CALIFORNIA EDL FACS AUTH REV REV BDS ST MARYS COLLEGE OF CALIFORNIA 2001 B | * | 130175UJ9 | 6/27/2007 | 120,000.00 |
| VERMONT ST STUDENT ASSISTANCE CORP ED LN REV ARCS-VSAC-SER DATED 10/08/2002 | | 92428CEG5 | 7/2/2007 | 1,000,000.00 |
| WESTERN PLACER CALIF UNI SCH CTFS PARTN COPS SCH FACS PROJS 2004 A | * | 959215AM6 | 7/2/2007 | 325,000.00 |
| NEW JERSEY ST HIGHER ED ASSISTANCE AUTH STUDENT LN REV DATED 04/28/2004 | | 646080GR6 | 7/3/2007 | 600,000.00 |
| LOS ANGELES CALIF CMNTY REDEV AGY MULTIFAMILY HSG REV VAR REF REV BDS PROMENADE TOWERS 2000 | * | 544393AT8 | 7/3/2007 | 280,000.00 |
| SAN LEANDRO CALIF MULTIFAMILY REV VAR RT DMD MULTIFAM MTG REV BDS HAAS AVENUE APTS PROJ 1985 B | * | 798448AC0 | 7/3/2007 | 250,000.00 |
| ABAG FIN AUTH FOR NONPROFIT CORPS CALIF REV VAR REV BDS JEWISH CMNTY CTR ORANGE 2004 | * | 00037CFW5 | 7/3/2007 | 175,000.00 |
| SACRAMENTO CNTY CALIF SANTN DIST FING AUTH REV VAR SUB LIEN REV BDS SACRAMENTO REGL SANITATION DIS 2000 C | * | 786134EQ5 | 7/3/2007 | 100,000.00 |
| ELSINORE VALLEY CALIF MUN WTR DIST CTFS PARTN ARCS-ELSINORE DUE 7/01/2035 | | 290319DB5 | 7/10/2007 | 1,000,000.00 |

*Asterisk denoted Banc of America transactions.

| | | | | |
|---|---|---|---|---|
| FRESNO CALIF JT PWRS FING AUTH LEASE REV ARCS-CAP IMPT DATED 03/03/2005 | | 358184HF9 | 7/10/2007 | 1,000,000.00 |
| SOUTHERN CALIF PUB PWR AUTH PWR PROJ REV DUE 07/01/2018 | | 842475ZZ1 | 7/10/2007 | 1,000,000.00 |
| RANCHO CALIF WTR DIST FING AUTH REV ARCS-SER A DATED 06/23/2004 | | 752111EY6 | 7/10/2007 | 600,000.00 |
| CALIFORNIA HEALTH FACS FING AUTH REV INSD-THE EPISCOPAL DATED 02/26/2002 | | 13033FJF8 | 7/11/2007 | 450,000.00 |
| RANCHO CALIF WTR DIST FING AUTH REV ARCS-SER A DATED 06/23/2004 | | 752111EY6 | 7/17/2007 | 1,000,000.00 |
| CALIFORNIA EDL FACS AUTH REV VAR RATE REV BDS UNIVERSITY OF SAN FRANCISCO SERIES 2006 | * | 130178FA9 | 7/19/2007 | 925,000.00 |
| SANTA CLARA VY CALIF TRANSN AUTH SALES TAX REV AUCTION RATE SECURITIES 2000 MEASURE A 2006 SERIES E | * | 80168NBS7 | 7/19/2007 | 450,000.00 |
| OAKLAND CALIF JT PWRS FING AUTH LEASE REV BLDG-A-2 DUE 08/01/2026 | | 67227WBV6 | 7/25/2007 | 200,000.00 |
| NORTH SAN DIEGO CNTY TRAN DEV BRD CALIF CTFS PARTN DUE 9/01/2034 | | 662240AA8 | 7/25/2007 | 125,000.00 |
| CALIFORNIA INFRASTRUCTURE & ECONOMIC DEV BK REV WORKERS DUE 10/01/2023 | | 13033WPJ6 | 7/26/2007 | 1,000,000.00 |
| CALIFORNIA STATEWIDE CMNTYS DEV AUTH REV ARCS-INDS-JOHN DATED 06/14/2006 | | 1309112K5 | 7/26/2007 | 1,000,000.00 |
| SAN BERNARDINO CNTY CALIF FLOOD CTL DIST JUDGMENT OBLIG DATED 05/29/2007 | | 796860AB0 | 7/26/2007 | 1,000,000.00 |
| WESTERN MUN WTR DIST FACS AUTH CALIF REV ADJ-SER A RMKT DATED 10/24/2002 | | 95874QAB1 | 7/27/2007 | 1,000,000.00 |

*Asterisk denoted Banc of America transactions.

| | | | |
|---|---|---|---|
| CALIFORNIA INFRASTRUCTURE & ECONOMIC DEV BK REV ARS REV BDS THE COLBURN SCHOOL SERIES 2005 | * 13033WXA6 | 7/27/2007 | 600,000.00 |
| METROPOLITAN WTR DIST SOUTHN CALIF WTRWKS REV ARS-SER B DATED 06/07/2007 | 5926634N5 | 7/27/2007 | 50,000.00 |
| PASADENA CALIF CTFS PARTN ARCS-CONFERENCE CTR PJ-SER B DATED 09/07/2006 | 702204LM8 | 7/30/2007 | 550,000.00 |
| ACCESS TO LNS FOR LEARNING STUDENT LN CORP CALIF REV SER DATED 06/11/2003 | 00432MAX7 | 7/31/2007 | 1,000,000.00 |
| CALIFORNIA HEALTH FACS FING AUTH REV INSD HOSP-MARSHALL DATED 03/25/2004 | 13033FRL6 | 8/1/2007 | 550,000.00 |
| NEWPORT BEACH CALIF REV ARS REV BDS HOAG MEM HOSP PRESBYTERIAN 2007E | * 651785AQ0 | 8/3/2007 | 2,575,000.00 |
| WESTERN MUN WTR DIST FACS AUTH CALIF REV ADJ-SER A RMKT DATED 10/24/2002 | 95874QAB1 | 8/8/2007 | 1,000,000.00 |
| NEWPORT BEACH CALIF REV ARS REV BDS HOAG MEM HOSP PRESBYTERIAN 2007E | * 651785AQ0 | 8/10/2007 | 900,000.00 |
| RANCHO CALIF WTR DIST FING AUTH REV ARCS-SER A DATED 06/23/2004 | 752111EY6 | 8/14/2007 | 1,000,000.00 |
| SAN FRANCISCO CALIF CITY & CNTY REDEV AGY MULTIFAMILY REV DUE 06/15/2034 | 79765TBY0 | 8/14/2007 | 1,000,000.00 |
| PASADENA CALIF CTFS PARTN ARCS-CONFERENCE CTR PJ-SER B DATED 09/07/2006 | 702204LM8 | 8/20/2007 | 1,000,000.00 |
| CALIFORNIA INFRASTRUCTURE & ECONOMIC DEV BK REV WORKERS DUE 10/01/2017 | 13033WPE7 | 8/20/2007 | 625,000.00 |
| ELSINORE VALLEY CALIF MUN WTR DIST CTFS PARTN ARCS-SER B DATED 08/07/2007 | 290319DC3 | 8/20/2007 | 600,000.00 |

| | | | |
|---|---|---|---|
| OAKLAND CALIF JT PWRS FING AUTH LEASE REV BLDG-A-1 DUE 08/01/2026 | 67227WBU8 | 8/22/2007 | 50,000.00 |
| SAN BERNARDINO CNTY CALIF FLOOD CTL DIST JUDGMENT OBLIG DATED 05/29/2007 | 796860AB0 | 8/23/2007 | 1,000,000.00 |
| CALIFORNIA STATEWIDE CMNTYS DEV AUTH REV ARCS-INDS-JOHN DATED 06/14/2006 | 1309112K5 | 8/23/2007 | 625,000.00 |
| CALIFORNIA INFRASTRUCTURE & ECONOMIC DEV BK REV WORKERS DUE 10/01/2017 | 13033WPE7 | 8/27/2007 | 1,000,000.00 |
| FRESNO CALIF JT PWRS FING AUTH LEASE REV ARCS-CAP IMPT DATED 03/03/2005 | 358184HF9 | 8/28/2007 | 900,000.00 |
| FRESNO CALIF JT PWRS FING AUTH LEASE REV ARCS-CAP IMPT DATED 03/03/2005 | 358184HF9 | 9/18/2007 | 1,000,000.00 |
| SOUTHERN CALIF PUB PWR AUTH PWR PROJ REV DUE 07/01/2018 | 842475ZZ1 | 9/18/2007 | 1,000,000.00 |
| CALIFORNIA STATEWIDE CMNTYS DEV AUTH REV ARCS-INDS-JOHN DATED 06/14/2006 | 1309112K5 | 9/27/2007 | 1,000,000.00 |
| ORANGE CNTY CALIF HSG AUTH MULTIFAMILY APT DEV REV REV BDS LANTERN PINE PJ 1997 CC * | 684263AA4 | 10/1/2007 | 150,000.00 |
| CALIFORNIA ST DEPT WTR RES PWR SUPPLY REV VAR REV BDS 2005 G-5 * | 13066YLP2 | 10/1/2007 | 100,000.00 |
| FRESNO CALIF JT PWRS FING AUTH LEASE REV ARCS-CAP IMPT DATED 03/03/2005 | 358184HF9 | 10/9/2007 | 250,000.00 |
| CALIFORNIA HEALTH FACS FING AUTH REV INSD HOSP-MARSHALL DATED 03/25/2004 | 13033FRL6 | 10/10/2007 | 800,000.00 |
| PASADENA CALIF CTFS PARTN ARCS-CONFERENCE CTR PJ-SER B DATED 09/07/2006 | 702204LM8 | 10/15/2007 | 1,000,000.00 |

| | | | | |
|---|---|---|---|---|
| ELSINORE VALLEY CALIF MUN WTR DIST CTFS PARTN ARCS-SER B DATED 08/07/2007 | | 290319DC3 | 10/15/2007 | 350,000.00 |
| FRESNO CALIF JT PWRS FING AUTH LEASE REV ARCS-CAP IMPT DATED 03/03/2005 | | 358184HF9 | 10/16/2007 | 1,000,000.00 |
| ELSINORE VALLEY CALIF MUN WTR DIST CTFS PARTN ARCS-ELSINORE DUE 7/01/2035 | | 290319DB5 | 10/16/2007 | 650,000.00 |
| SAN BERNARDINO CNTY CALIF FLOOD CTL DIST JUDGMENT OBLIG DATED 05/29/2007 | | 796860AB0 | 11/21/2007 | 575,000.00 |
| ELSINORE VALLEY CALIF MUN WTR DIST CTFS PARTN ARCS-ELSINORE DUE 07/01/2035 | | 290319DB5 | 11/27/2007 | 1,000,000.00 |
| SAN BERNARDINO CNTY CALIF FLOOD CTL DIST JUDGMENT OBLIG DATED 05/29/2007 | | 796860AB0 | 12/13/2007 | 1,000,000.00 |
| RANCHO CALIF WTR DIST FING AUTH REV ARCS-SER A DATED 06/23/2004 | | 752111EY6 | 12/18/2007 | 1,000,000.00 |
| MISSOURI HIGHER ED LN AUTH STUDENT LN REV BDS 2004 G | * | 606072HQ2 | 12/21/2007 | 1,450,000.00 |
| MISSOURI HIGHER ED LN AUTH STUDENT LN REV ARCS 2002 E | * | 606072GR1 | 12/21/2007 | 1,000,000.00 |
| PENNSYLVANIA ST HIGHER ED ASSISTANCE AGY STUDENT LN REV E REV BDS GG-4 | * | 709163FA2 | 12/21/2007 | 1,000,000.00 |
| FLORIDA EDL LN MARKETING CORP EDL LN REV SER A-4 DATED 02/15/2002 | | 340640AG6 | 12/26/2007 | 1,000,000.00 |
| PENNSYLVANIA ST HIGHER ED ASSISTANCE AGY STUDENT LN REV DUE 06/01/2039 | | 709163ED7 | 12/26/2007 | 1,000,000.00 |
| OKLAHOMA ST STUDENT LN AUTH REV REV BDS 2000 A-3 | * | 679110CN4 | 12/27/2007 | 1,400,000.00 |

*Asterisk denoted Banc of America transactions.

| | | | |
|---|---|---|---|
| BRAZOS HIGHER ED AUTH INC STUDENT LN BKD NT 2007-1 CL 1-A-3 | * 10620NBU1 | 12/27/2007 | 1,000,000.00 |
| MISSOURI HIGHER ED LN AUTH STUDENT LN REV ARCS 2002 E | * 606072GR1 | 12/27/2007 | 1,000,000.00 |
| PENNSYLVANIA ST HIGHER ED ASSISTANCE AGY STUDENT LN REV E REV BDS GG-4 | * 709163FA2 | 12/27/2007 | 1,000,000.00 |
| ALABAMA HIGHER ED LN CORP STUDENT LN REV ARCS-SR SER A-2 DATED 11/30/2006 | 010305EV8 | 12/27/2007 | 1,000,000.00 |
| INDIANA SECONDARY MKT FOR ED LNS INC ED LN REV DUE 12/01/2038 | 455900AR1 | 12/27/2007 | 1,000,000.00 |
| UTAH ST BRD REGENTS STUDENT LN REV CL II-SER V-2 DATED 04/09/2002 | 917546FS7 | 12/27/2007 | 1,000,000.00 |
| KENTUCK Y HIGHER ED STUDENT LN CORP | 49130NBL2 | 1/2/2008 | 1,000,000.00 |
| CENTRAL TEX HIGHER ED AUTH INC | 155488BW8 | 1/3/2008 | 1,000,000.00 |
| SECONDARY MARKET SVCS CORP HAWAII STUDENT LN | 813659AK5 | 1/3/2008 | 1,000,000.00 |
| NEW HAMPSHIRE HEALTH & ED FACS | 644614HH5 | 1/8/2008 | 300,000.00 |
| MISSOURI HIGHER ED LN AUTH STUDENT LN REV | 606072EX0 | 1/16/2008 | 900,000.00 |
| ACCESS GROUP INC NTS ARC AUCTION RATE | 00432CAR2 | 1/18/2008 | 2,000,000.00 |
| ACCESS GROUP INCO NTS AUCTION RATE | 00432CAR2 | 1/23/2008 | 1,000,000.00 |

*Asterisk denoted Banc of America transactions.

| | | | |
|---|---|---|---|
| PENNSYLVANIA ST HIGHER ED ASST | 709163CZ0 | 1/23/2008 | 900,000.00 |
| COLLEGE LOAN CORP TR I TXBL LOAN ABS | 194262DD0 | 1/28/2008 | 950,000.00 |
| NEW MEXICO EDL ASSISTANCE FNDTN ARS | 647110BY0 | 1/29/2008 | 900,000.00 |
| IOWA STUDENT LN LIQUIDITY CORP | 462590GC8 | 1/30/2008 | 700,000.00 |
| SAN FRANCISCO CALIF CITY & CNTY REDEV AGY MULTIFAMILI | 79765TBY0 | 2/4/2008 | 400,000.00 |
| SAN FRANCISCO CALIF CITY & CNTY REDEV AMT | 79765TBY0 | 2/6/2008 | 100,000.00 |
| SAN FRANCISCO CALIF CITY & CNTY REDEV AMT | 79765TBY0 | 2/7/2008 | 600,000.00 |
| INDIANA SECONDARY MKT FOR ED | 455900BH2 | 2/12/2008 | 1,100,000.00 |
| JACKSONVILLE FLA PORT AUTH REV ARCS | 469466DW3 | 2/12/2008 | 1,000,000.00 |
| | | | |

\*Asterisk denoted Banc of America transactions.

| SALES/REDEMPTIONS: | | | |
|---|---|---|---|
| **SECURITY** | **CUSIP** | **TRADE DATE** | **TOTAL FACE VALUE** |
| NEW JERSEY ST HSG & MTG FIN AGY MULT-FAMILY REV DATED 2/10/05 FGIC 8/27/2005 AT 100 | 646108AC4 | 7/29/2005 | (500,000.00) |
| CEDAR RAPIDS IOWA HOSP REV DURE 8/15/2032 VARIABLE 2.37% INSURED BY CALLABLE-NEXT PRICING CALL | 150543AA4 | 8/1/2005 | (500,000.00) |
| NEW JERSEY ECONOMIC DEV AUTH REV DUE 5/1/2019 VARIABLE 2.20% INSURED BY FSA 7/21/2005 AT 100 | 645916VV6 | 8/1/2005 | (500,000.00) |
| NEW JERSEY ST TPK AUTH TPK REV DUE 1/1/2024 VARIABLE 2.20% INSURED BY CALLABLE-NEXT PRICING CALL | 646139WN1 | 8/1/2005 | (500,000.00) |
| NEW YORK ST DORM AUTH REVS DUE 7/1/20321 VARIABLE 2.20% INSURED BY CALLABLE-NEXT PRICING CALL | 6499016V2 | 8/1/2005 | (400,000.00) |
| COLORADO HEALTH FACS AUTH REV DUE 12/1/2025 VARIABLE 2.10% INSURED BY CALLABLE-NEXT PRICING CALL | 196474PS3 | 8/2/2005 | (500,000.00) |
| NEW JERSEY HEALTH CARE FACS FING AUTH REV DUE 1/1/2035 VARIABLE 2.35% INSURED BY CALLABLE-NEXT PRICING CALL | 64579FCV3 | 8/2/2005 | (225,000.00) |
| NEW YORK NY CITY TRAN AUTH MET TRANSN AUTH TRIBOROUGH DUE 1/1/2030 VARIABLE 2.25% INSURED BY CALLABLE-NEXT PRICING CALL | 649713CJ1 | 8/3/2005 | (500,000.00) |
| AZUSA CALIF UNI SCH DIST CTFS PARTN DUE 6/1/2038 VARIABLE 2.00% INSURED BY FSA CALLABLE-NEXT PRICING CALL PUTABLE 8/11/2005 AT 100 | 055034AE2 | 8/4/2005 | (250,000.00) |
| EASTERN MUN WTR DIST CALIF WTR & SWR REV CTFS PARTN DATED 9/25/2003 REVENUE ANTICIPATION MBIA INSURANCE CORP 8/25/2005 AT 100 | 276771FM9 | 8/4/2005 | (135,000.00) |

\*Asterisk denoted Banc of America transactions.

| | | | |
|---|---|---|---|
| HONOLULU HAWAII CITY & CNTY WASTEWTR SYS REV DATED 5/8/2003 REVENUE ANTICIPATION MBIA INSURANCE CORP 8/13/05 AT 100 DUE 7/1/2032 VARIABLE 2.30% INSURED BY CALLABLE-NEXT PRICING CALL | 438701CN2 | 8/5/2005 | (200,000.00) |
| SAINT JOSEPH MICH HOSP FIN AUTH HOSP REV DUE 1/1/2032 VARIABLE 2.50% INSURED BY FSA 8/18/2005 AT 100 | 790678BZ8 | 8/5/2005 | (500,000.00) |
| JEFFERSON CNTY KY HEALTH FACS REV DUE 3/1/2032 VARIABLE 2.35% INSURED BY CALLABLE NEXT PRICING CALL | 472902JQ9 | 8/8/2005 | (500,000.00) |
| ILLINOIS FIN AUTH REV DUE 8/15/2038 VARIABLE 2 33% INSURED BY FSA 9/9/2005 AT 100 DATED 5/27/2004 REVENUE ANTICIPATION CALLABLE-NEXT PRICING CALL | 45200BDR6 | 8/9/2005 | (500,000.00) |
| LOUISIANA PUB FACS AUTH HOSP REV DUE 9/1/2025 VARIABLE 2.36% INSURED BY CALLABLE NEXT PRICING CALL DATED 12/19/1995 REVENUE ANTICIPATION AMER MUNI BD ASSURANCE CORP 9/1/2005 AT 100 | 546395ZA5 | 8/9/2005 | (500,000.00) |
| WEST VIRGINIA ST HOSP FIN AUTH HOSP REV DUE 2/15/2034 VARIABLE 2.30% INSURED BY FSA 8/23/2005 AT 100 DATED 6/30/2004 REVENUE ANTICIPATION CALLABLE-NEXT PRICING CALL | 956622VX9 | 8/9/2005 | (300,000.00) |
| WEST VIRGINIA ST HOSP FIN AUTH HOSP REV DUE 2/15/2034 VARIABLE 2.30% INSURED BY FSA 8/23/2005 AT 100 DATED 6/30/2004 REVENUE ANTICIPATION CALLABLE-NEXT PRICING CALL | 956622VX9 | 8/10/2005 | (200,000.00) |
| AZUSA CALIF UNI SCH DIST CTFS PARTN DUE 6/1/2021 VARIABLE 2.00% INSURED BY FSA CALLABLE-NEXT PRICING CALL PUTABLE 8/11/2005 AT 100 | 055034AC6 | 8/11/2005 | (200,000.00) |
| HUNTINGTON BEACH CALIF UN HIGH SCH DIST CTFS PARTN DATED 10/23/2003 GENERAL OBLIGATION INSURED BY PUTABLE 8/8/2005 AT 100 | 446231AN2 | 8/11/2005 | (300,000.00) |
| SNOWLINE CALIF JT UNI SCH DIST CTFS PARTN DUE 6/1/2039 VARIABLE 2.00% INSURED BY FSA 9/4/2005 AT 100 | 833427BS5 | 8/11/2005 | (300,000.00) |
| WEST VIRGINIA ST HOSP FIN AUTH HOSP REV DUE 2/15/2034 VARIABLE 2.30% INSURED BY FSA 8/23/2005 AT 100 DATED 6/30/2004 REVENUE ANTICIPATION CALLABLE-NEXT PRICING CALL | 956622VX9 | 8/11/2005 | (50,000.00) |

| | | | |
|---|---|---|---|
| CARLSBAD CALIF UNI SCH DIST CTFS PARTN DUE 9/1/2032 VARIABLE 2.00% FSA 9/1/2005 AT 100 | 142666CG9 | 8/12/2005 | (100,000.00) |
| SANTA CLARA CALIF ELEC REV DUE 7/1/2010 VARIABLE 2.00% INSURED BY CALLABLE-NEXT PRICING CALL PUTABLE 8/11/05 AT 100 | 801444AZ3 | 8/12/2005 | (180,000.00) |
| CALIFORNIA HELATH FACS FING AUTH REV DUE 7/1/2017 VARIABLE 2.00% INSURED BY CALLABLE-NEXT PRICING CALL | 13033ABQ3 | 8/31/2005 | (100,000.00) |
| CALIFORNIA HELATH FACS FING AUTH REV DUE 2/1/2032 VARIABLE 2.06% INSURED BY CALLABLE-NEXT PRICING CALL DATED 2/26/2002 REVENUE ANTICIPATION AMER MUNI BD ASSURANCE CORP 9/10/2005 AT 100 | 13033FJF8 | 9/2/2005 | (100,000.00) |
| CALIFORNIA ST DEPT WTR RES CENT VY PROJ REV DATED 3/18/2004 REVENUE ANTICIPATION XL CAPITAL ASSURANCE 9/9/2005 AT 100 | 13066KQW2 | 9/2/2005 | (700,000.00) |
| LIVERMORE CLAIF MULTIFAMILY REV FNMA DUE 8/1/2018 VARIABLE 2.29% PUTABLE 7/21/2005 AT 100 | 537900AE2 | 9/2/2005 | (800,000.00) |
| METROPOLITAN WTR DIST SOUTHN CALIF WTRWKS REV DATED 3/28/1996 REVENUE ANTICIPATION AMER MUNI BD ASSURANCE CORP 8/1/2005 AT 100 | 592663QV3 | 9/2/2005 | (800,000.00) |
| OAKLAND CALIF JT PWRS FING AUTH LEASE REV DUE 8/1/2026 VARIABLE 2.20% INSURED BY CALLABLE-NEXT PRICING CALL | 67227WBV6 | 9/7/2005 | (50,000.00) |
| CALIFORNIA HELATH FACS FING AUTH REV DUE 2/1/2032 VARIABLE 2.06% INSURED BY CALLABLE-NEXT PRICING CALL DATED 2/26/2002 REVENUE ANTICIPATION AMER MUNI BD ASSURANCE CORP 9/10/2005 AT 100 | 13033FJF8 | 9/15/2005 | (700,000.00) |
| CALIFORNIA ST DEPT WTR RES CENT VY PROJ REV DATED 3/18/2004 REVENUE ANTICIPATION XL CAPITAL ASSURANCE 9/9/2005 AT 100 | 13066KQW2 | 9/15/2005 | (300,000.00) |
| LIVERMORE CLAIF MULTIFAMILY REV FNMA DUE 8/1/2018 VARIABLE 2.29% PUTABLE 7/21/2005 AT 100 | 537900AE2 | 9/15/2005 | (100,000.00) |

*Asterisk denoted Banc of America transactions.

| | | | |
|---|---|---|---|
| CALIFORNIA ST ECONOMIC RECOVERY DUE 7/1/2023 VARIABLE 2.26% INSURED BY CALLABLE NEXT PRICING CALL PUTABLE 8/5/2005 AT 100 | 13067JFA4 | 9/20/2005 | (1,000,000.00) |
| EASTERN MUN WTR DIST CALIF WTR & SWR REV CTFS PARTN DATED 5/26/1993 REVENUE ANTICIPATION CALLABLE-NEXT PRICING CALL PUTABLE 9/28/2005 AT 100 | 276771CEO | 9/20/2005 | (295,000.00) |
| EASTERN MUN WTR DIST CALIF WTR & SWR REV CTFS PARTN DATED 9/25/2003 REVENUE ANTICIPATION MBIA INSURANCE CORP LLOYDS TSB BK PLC 8/25/2005 AT 100 | 276771FN71 | 9/20/2005 | (100,000.00) |
| LOS ANGELES CNTY CALIF MET TRANSN AUTH SALES TAX REV DATED 6/30/1993 REVENUE ANTICIPATION MBIA INSUREANCE CORP 9/4/2005 AT 100 | 544712AV4 | 9/20/2005 | (295,000.00) |
| METROPOLITAN WTR DIST SOUTHN CALIF WTRWKS REV DATED 3/28/1996 REVENUE ANTICIPATION AMER MUNI BD ASSURANCE CORP 8/1/2005 AT 100 | 592663QV3 | 9/20/2005 | (200,000.00) |
| MOORPARK CLAIF UNI SCH DIST CTFS PARTN DUE 11/1/2028 VARIABLE 2.26% INSURED BY FSA 9/3/2005 AT 100 | 616261AT0 | 9/20/2005 | (200,000.00) |
| MOORPARK CLAIF UNI SCH DIST CTFS PARTN DUE 11/1/2028 VARIABLE 2.26% INSURED BY FSA 9/3/2005 AT 100 | 616261AT0 | 9/20/2005 | (600,000.00) |
| CALIFORNIA HELATH FACS FING AUTH REV DUE 7/1/2009 VARIABLE 2.03% INSURED BY CALLABLE-NEXT PRICING CALL PUTABLE 8/11/2005 AT 100 | 13033HXL5 | 9/21/2005 | (100,000.00) |
| CALIFORNIA HELATH FACS FING AUTH REV DUE 7/1/2016 VARIABLE 2.03% INSURED BY CALLABLE-NEXT PRICING CALL PUTABLE 8/11/2005 AT 100 | 13033HXM3 | 9/21/2005 | (400,000.00) |
| CALIFORNIA HELATH FACS FING AUTH REV DUE 7/1/2020 VARIABLE 2.03% INSURED BY CALLABLE-NEXT PRICING CALL PUTABLE 8/10/2005 AT 100 | 13033HXN1 | 9/21/2005 | (100,000.00) |
| CALIFORNIA HELATH FACS FING AUTH REV DUE 7/1/2020 VARIABLE 2.03% INSURED BY CALLABLE-NEXT PRICING CALL PUTABLE 8/10/2005 AT 100 | 13033HXN1 | 9/21/2005 | (300,000.00) |

*Asterisk denoted Banc of America transactions.

| | | | |
|---|---|---|---|
| LIVERMORE CLAIF MULTIFAMILY REV FNMA DUE 8/1/2018 VARIABLE 2.29% PUTABLE 7/21/2005 AT 100 | 537900AE2 | 9/21/2005 | (100,000.00) |
| RANCHO CALIF WTR DIST FING AUTH REV DUE 8/1/2031 VARIABLE 0.00% INSURED BY FGIC | 752111EV2 | 9/21/2005 | (200,000.00) |
| WESTERN MUN WTR DIST FACS AUTH CALIF REV DUE 10/1/2032 VARIABLE 2.26% INSURED BY FSA | 95874QAA3 | 9/21/2005 | (300,000.00) |
| CHELA FINL INC CALIF STUDENT LN REV DUE 6/1/2037 VARIABLE 2.35% CALLABLE-NEXT PRICING CALL | 16309MAH8 | 9/22/2005 | (1,000,000.00) |
| RANCHO CALIF WTR DIST FING AUTH REV DUE 8/1/2029 VARIABLE 1.97% INSURED BY FGIC 9/1/2005 AT 100 | 752111EW0 | 9/28/2005 | (280,000.00) |
| RANCHO CALIF WTR DIST FING AUTH REV DUE 8/1/2029 VARIABLE 1.97% INSURED BY FGIC 9/1/2005 AT 100 | 752111EW0 | 9/28/2005 | (365,000.00) |
| WESTERN MUN WTR DIST FACS AUTH CALIF REV DUE 10/1/2032 VARIABLE 2.26% INSURED BY FSA | 95874QAA3 | 9/28/2005 | (300,000.00) |
| WESTERN MUN WTR DIST FACS AUTH CALIF REV DUE 10/1/2032 VARIABLE 2.00% INSURED BY FSA | 95874QAA3 | 9/30/2005 | (500,000.00) |
| COLLEGIATE FUNDING SVCS 28DAY ARC DUE 3/1/2042 | 19458LAF7 | 10/7/2005 | (400,000.00) |
| NORTHSTAR GUARANTEE INC DIVISI ON B TXBLE STUDENT LOAN ABS ADJUSTABLE RATE 3.90% REVENUE ANTICIPATION CALLABLE FIRST COUPON 12/12/2000 | 66704JAA6 | 10/7/2005 | (400,000.00) |
| ARIZONA EDL LN MARKETING CORP EDL LN REV ARCS-SER A-6 DATED 05/21/2001 | 040504EB4 | 11/1/2005 | (200,000.00) |

| | | | | |
|---|---|---|---|---|
| MISSOURI HIGHER ED LN AUTH STUDENT LN REV ARCS-SER GG DATED 2/3/1999 VARIABLE | | 606072FB7 | 11/3/2005 | (500,000.00) |
| CHELA FINL USA INC CALIF STUDEN LN REV ARCS-SR-SER B-2 DATED 11/21/1996 VARIABLE SUBJECT TO OPTIONAL REDEMPTION | | 16309PAB4 | 11/10/2005 | (1,000,000.00) |
| UNION FINL SERVICES SER 1996-C CL A6 VAR RATE VARIABLE MATURITY DATE 7/1/2014 | * | 906619AH4 | 11/29/2005 | (400,000.00) |
| BRAZOS STUDENT LN SER 2004-A2 MUNI AUT RATE NT STUDENT LN ASSET VARIABLE MATURITY DATE 3/1/2040 | * | 10623PCV0 | 12/2/2005 | (150,000.00) |
| BRAZOS STUDENT LN SER 2004-A2 MUNI AUT RATE NT STUDENT LN ASSET VARIABLE MATURITY DATE 3/1/2040 | * | 10623PCV0 | 12/2/2005 | (200,000.00) |
| IOWA STUDENT LN LIQUIDITY CORP STUDENT LN REV ARCS-SER M DATED 09/22/1999 | | 462590DY3 | 2/1/2006 | (750,000.00) |
| BRAZOS STUDENT LN SER 2004-A2 MUNI AUT RATE NT STUDENT LN ASSET VARIABLE MATURITY DATE 3/1/2040 | * | 10623PCV0 | 2/27/2006 | (150,000.00) |
| NORTH TEX HIGHER ED AUTH INC STUDENT LN REV ARCS-CL II-SER DATED 3/12/2002 | | 662826CY0 | 3/8/2006 | (350,000.00) |
| NEW JERSEY ST HSG & MTG FIN AGY MULTI-FAMILY HSG REV DATED 05/08/2003 | | 6461073N0 | 3/9/2006 | (50,000.00) |
| UNION FINL SERVICES SER 1996-C CL A6 VAR RATE VARIABLE MATURITY DATE 7/1/2014 | * | 906619AH4 | 3/22/2006 | (300,000.00) |
| BRAZOS STUDENT LN SER 2004-A2 MUNI AUT RATE NT STUDENT LN ASSET | * | 10623PCV0 | 3/24/2006 | (550,000.00) |

*Asterisk denoted Banc of America transactions.

| | | | |
|---|---|---|---|
| BRAZOS STUDENT LN SER 2004-A2 MUNI AUT RATE NT STUDENT LN ASSET VARIABLE MATURITY DATE 3/1/2040 | * | 10623PCV0 | 3/27/2006 | (200,000.00) |
| KNOWLEDGE WKS FNDTN OHIO STUDENT LN REV RFDG-RAMS-SER DATED 11/29/2000 | | 49924VAA9 | 4/19/2006 | (100,000.00) |
| UNION FINL SERVICES SER 1996-C CL A6 VAR RATE VARIABLE MATURITY DATE 7/1/2014 | * | 906619AH4 | 4/19/2006 | (200,000.00) |
| ARIZONA EDL LN MARKETING CORP EDL LN REV ARCS-SER A-6 DATED 05/02/2001 | | 040504EB4 | 5/15/2006 | (650,000.00) |
| ARIZONA EDL LN MARKETING CORP EDL LN REV ARCS-SER A-6 DATED 05/02/2001 | | 040504EB4 | 5/16/2006 | (150,000.00) |
| NORTHSTAR GUARANTEE INC DIV B MINN STUDENT LN ARS BDS NORTHSTAR EDU FINANCE STUDENT LN ASSET BKD 2004 A-1 VARIABLE MATURITY DATE 12/1/2044 | * | 66704JAL2 | 5/22/2006 | (1,050,000.00) |
| COLLEGIATE FNDG SVCS SER 2003-B CL A3 | * | 19458LAK6 | 6/19/2006 | (50,000.00) |
| NEW JERSEY ST HSG & MTG FIN AGY MULTI-FAMILY HSG REV DATED 05/08/2003 | | 6461073N0 | 6/28/2006 | (450,000.00) |
| FEDERATED STUDENT SER 2003-A CL A2 | * | 268440AD6 | 6/29/2006 | (300,000.00) |
| COLLEGIATE FDG SVCS ED LN TR 2003-A STUDENT LN ASSET BKD NT CL A6 | * | 19458LAF7 | 10/6/2006 | (50,000.00) |
| MISSOURI HIGHER ED LN AUTH STUDENT LN REV ARCS 2002 D | * | 606072GQ3 | 10/6/2006 | (800,000.00) |

*Asterisk denoted Banc of America transactions.

| | | | | |
|---|---|---|---|---|
| SLM STUDENT LOAN TR SER 2003-2CL B VAR RATE | * | 78442GFX9 | 10/6/2006 | (300,000.00) |
| SOUTH CAROLINA STUDENT LN CORP ED LN REV REV BDS SER A-2 | * | 83714RAS2 | 10/6/2006 | (1,250,000.00) |
| IOWA STUDENT LN LIQUIDITY CORP STUDENT LN REV ARCS-SER M DATED 09/22/1999 | | 462590DY3 | 10/11/2006 | (850,000.00) |
| SLM STUDENT LN TR SER 2003-B CL A4 | * | 78443CAP9 | 10/11/2006 | (200,000.00) |
| ILLINOIS STUDENT ASSISTANCE COMMN STUDENT LN REV ARCS-SR DATED 07/19/2005 | | 452281HR2 | 10/12/2006 | (400,000.00) |
| INDIANA SECONDARY MKT EDL LNS INC ED LN REV CTFS-SER 2004-1 DATED 09/24/2004 | | 454905AY6 | 10/16/2006 | (400,000.00) |
| PENNSYLVANIA ST HIGHER ED ASSISTANCE AGY STUDENT LN REV DATED 12/15/2000 | | 709163CC1 | 10/16/2006 | (1,000,000.00) |
| EDINVEST CO SER 2004-1 CL A1 VAR RATE | * | 280850AC2 | 10/18/2006 | (1,100,000.00) |
| FEDERATED STUDENT SER 2003-A CL A2 | * | 268440AD6 | 10/18/2006 | (700,000.00) |
| VOLUNTEER ST STUDENT FDG CORP TENN EDL LN REV | * | 928809AQ5 | 10/24/2006 | (100,000.00) |
| ILLINOIS STUDENT ASSISTANCE COMMN STUDENT LN REV SER I 3 DATED 08/20/2002 | | 452281GS1 | 10/25/2006 | (600,000.00) |

| | | | | |
|---|---|---|---|---|
| NEW HAMPSHIRE HIGHER ED LN CORP ED LN REV SR ARCS-SER A-1 DATED 04/21/1999 | | 644616AF1 | 10/30/2006 | (1,000,000.00) |
| ARIZONA EDL LN MARKETING CORP EDL LN REV ARCS-SER A-6 DATED 05/02/2001 | | 040504EB4 | 10/31/2006 | (850,000.00) |
| NELNET EDUCATION LN SER 2003-1 CL A6 | * | 64031RAF6 | 10/31/2006 | (900,000.00) |
| MISSOURI HIGHER ED LN AUTH STUDENT LN REV DUE 2/15/2026 VARUABKE 3.70% | | 606072DR4 | 12/6/2006 | (50,000.00) |
| MISSOURI HIGHER ED LN AUTH STUDENT LN REV DUE 2/15/2026 VARUABKE 3.70% | | 606072DR4 | 3/21/2007 | (450,000.00) |
| IOWA STUDENT LN LIQUIDITY CORP STUDENT LN REV ARCS-SER Y-1 DATED 03/27/2003 | | 462590FK1 | 3/27/2007 | (400,000.00) |
| NEW JERSEY ST HSG & MTG FIN AGY MULTI-FAMILY HSG REV DATED 05/08/2003 | | 6461073N0 | 4/4/2007 | (500,000.00) |
| SLMA 2003-2 A6 DUE 9/15/2028 | | 78442GFT8 | 4/13/2007 | (1,000,000.00) |
| ATLANTA GA DEV AUTH REV TUFF TEPB LLC PROJ DUE 07/01/2037 | | 04780NFW2 | 4/17/2007 | (1,000,000.00) |
| INDIANA SECONDARY MKT EDL LNS INC ED LN REV CTFS-SER 2004-1 DATED 09/24/2004 | | 454905AY6 | 4/30/2007 | (600,000.00) |
| NEW JERSEY ST HSG & MTG FIN AGY MULTI-FAMILY HSG REV DATED 05/08/2003 | | 6461073N0 | 5/30/2007 | (600,000.00) |

*Asterisk denoted Banc of America transactions.

| | | | |
|---|---|---|---|
| PENNSYLVANIA ST HIGHER ED ASSISTANCE AGY STUDENT LN REV DATED 10/19/2000 | 709163BZ1 | 7/2/2007 | (1,000,000.00) |
| IOWA STUDENT LN LIQUIDITY CORP STUDENT LN REV ARCS-SER Y-1 DATED 05/17/2001 | 462590EM8 | 7/3/2007 | (550,000.00) |
| NEW HAMPSHIRE HIGHER ED LN CORP ED LN REV SR ARCS-SER A-1 DATED 04/21/1999 | 644616AF1 | 7/9/2007 | (1,000,000.00) |
| ATLANTA GA DEV AUTH REV TUFF TEPB LLC PROJ DUE 07/01/2037 | 04780NFW2 | 7/10/2007 | (1,000,000.00) |
| KENTUCKY HIGHER ED STUDENT LN CORP STUDENT LN REV DUE 06/01/2035 | 49130NBC2 | 7/10/2007 | (1,000,000.00) |
| UTAH ST BRD REGENTS STUDENT LN REV ARCS-SER AA-2-CL II DATED 10/04/2005 | 917546GD9 | 7/10/2007 | (1,000,000.00) |
| IOWA STUDENT LN LIQUIDITY CORP STUDENT LN REV ARCS-SER Y-1 DATED 03/27/2003 | 462590FK1 | 7/17/2007 | (400,000.00) |
| RANCHO CALIF WTR DIST FING AUTH REV ARCS-SER A DATED 06/23/2004 | 752111EY6 | 7/17/2007 | (600,000.00) |
| INDIANA SECONDARY MKT EDL LNS INC ED LN REV CTFS-SER 2004-1 DATED 09/24/2004 | 454905AY6 | 7/23/2007 | (1,000,000.00) |
| CONNECTICUT STUDENT LN FNDTN STUDENT LN REV ARCS-SR SER A-1 DATED 07/27/2006 | 207784AS8 | 7/25/2007 | (900,000.00) |
| ACCESS GROUP INC DEL 2003-A STUDENT LN ASSET BKD NT CL A-2 DATED 05/06/2003 | 00432CAU5 | 7/26/2007 | (1,000,000.00) |

*Asterisk denoted Banc of America transactions.

| | | | |
|---|---|---|---|
| ILLINOIS STUDENT ASSISTANCE COMMN STUDENT LN REV ARCS-SR DATED 12/08/2005 | 452281HW1 | 7/26/2007 | (1,000,000.00) |
| MISSOURI HIGHER ED LN AUTH STUDENT LN REV ARC SER J DATED 06/28/2006 | 606072JG2 | 7/26/2007 | (1,000,000.00) |
| VERMONT ST STUDENT ASSISTANCE CORP ED LN REV ARCS-VSAC-SER DATED 10/08/2002 | 92428CEG5 | 7/26/2007 | (1,000,000.00) |
| NORTH SAN DIEGO CNTY TRAN DEV BRD CALIF CTFS PARTN DUE 9/01/2034 | 662240AA8 | 8/1/2007 | (125,000.00) |
| OAKLAND CALIF JT PWRS FING AUTH LEASE REV BLDG-A-2 DUE 08/01/2026 | 67227WBV6 | 8/1/2007 | (200,000.00) |
| WESTERN MUN WTR DIST FACS AUTH CALIF REV ADJ-SER A RMKT DATED 10/24/2002 | 95874QAB1 | 8/1/2007 | (225,000.00) |
| SANTA CLARA VY CALIF TRANSN AUTH SALES TAX REV AUCTION RATE SECURITIES 2000 MEASURE A 2006 SERIES E * | 80168NBS7 | 8/2/2007 | (450,000.00) |
| METROPOLITAN WTR DIST SOUTHN CALIF WTRWKS REV ARS-SER B DATED 06/07/2007 | 5926634N5 | 8/3/2007 | (50,000.00) |
| RANCHO CALIF WTR DIST FING AUTH REV ARCS-SER A DATED 06/23/2004 | 752111EY6 | 8/7/2007 | (675,000.00) |
| NEW JERSEY ST HIGHER ED ASSISTANCE AUTH STUDENT LN REV DATED 04/28/2004 | 646080GR6 | 8/8/2007 | (600,000.00) |
| WESTERN MUN WTR DIST FACS AUTH CALIF REV ADJ-SER A RMKT DATED 10/24/2002 | 95874QAB1 | 8/8/2007 | (775,000.00) |

*Asterisk denoted Banc of America transactions.

| | | | | |
|---|---|---|---|---|
| CALIFORNIA INFRASTRUCTURE & ECONOMIC DEV BK REV WORKERS DUE 10/01/2023 | | 13033WPJ6 | 8/9/2007 | (500,000.00) |
| CALIFORNIA STATEWIDE CMNTYS DEV AUTH REV ARCS-INDS-JOHN DATED 06/14/2006 | | 1309112K5 | 8/9/2007 | (175,000.00) |
| ILLNOIS STUDENT ASSISTANCE COMMN STUDENT LN REV VAR BDS ISAC SR SERIES 2003 B-2 VARIABLE MATURITY DATE 3/1/2038 | * | 452281GW2 | 8/9/2007 | (900,000.00) |
| ELSINORE VALLEY CALIF MUN WTR DIST CTFS PARTN ARCS-ELSINORE DUE 7/01/2035 | | 290319DB5 | 8/14/2007 | (600,000.00) |
| FRESNO CALIF JT PWRS FING AUTH LEASE REV ARCS-CAP IMPT DATED 03/03/2005 | | 358184HF9 | 8/14/2007 | (1,000,000.00) |
| RANCHO CALIF WTR DIST FING AUTH REV ARCS-SER A DATED 06/23/2004 | | 752111EY6 | 8/14/2007 | (325,000.00) |
| SOUTHERN CALIF PUB PWR AUTH PWR PROJ REV DUE 07/01/2018 | | 842475ZZ1 | 8/14/2007 | (125,000.00) |
| CALIFORNIA HEALTH FACS FING AUTH REV INSD-THE EPISCOPAL DATED 02/26/2002 | | 13033FJF8 | 8/15/2007 | (450,000.00) |
| CALIFORNIA INFRASTRUCTURE & ECONOMIC DEV BK REV WORKERS DUE 10/01/2023 | | 13033WPJ6 | 8/16/2007 | (500,000.00) |
| SAN BERNARDINO CNTY CALIF FLOOD CTL DIST JUDGMENT OBLIG DATED 05/29/2007 | | 796860AB0 | 8/16/2007 | (200,000.00) |
| PASADENA CALIF CTFS PARTN ARCS-CONFERENCE CTR PJ-SER B DATED 09/07/2006 | | 702204LM8 | 8/20/2007 | (550,000.00) |

\*Asterisk denoted Banc of America transactions.

| | | | | |
|---|---|---|---|---|
| CALIFORNIA STATEWIDE CMNTYS DEV AUTH REV ARCS-INDS-JOHN DATED 06/14/2006 | | 1309112K5 | 8/23/2007 | (825,000.00) |
| SAN BERNARDINO CNTY CALIF FLOOD CTL DIST JUDGMENT OBLIG DATED 05/29/2007 | | 796860AB0 | 8/23/2007 | (800,000.00) |
| CALIFORNIA INFRASTRUCTURE & ECONOMIC DEV BK REV WORKERS DUE 10/01/2017 | | 13033WPE7 | 8/27/2007 | (625,000.00) |
| OAKLAND CALIF JT PWRS FING AUTH LEASE REV BLDG-A-1 DUE 08/01/2026 | | 67227WBU8 | 8/29/2007 | (50,000.00) |
| CALIFORNIA EDL FACS AUTH REV REV BDS ST MARYS COLLEGE OF CALIFORNIA 2001 B | * | 130175UJ9 | 9/5/2007 | (120,000.00) |
| CALIFORNIA HEALTH FACS FING AUTH REV INSD HOSP-MARSHALL DATED 03/25/2004 | | 13033FRL6 | 9/5/2007 | (250,000.00) |
| FRESNO CALIF JT PWRS FING AUTH LEASE REV ARCS-CAP IMPT DATED 03/03/2005 | | 358184HF9 | 9/18/2007 | (900,000.00) |
| SOUTHERN CALIF PUB PWR AUTH PWR PROJ REV DUE 07/01/2018 | | 842475ZZ1 | 9/18/2007 | (875,000.00) |
| ELSINORE VALLEY CALIF MUN WTR DIST CTFS PARTN ARCS-SER B DATED 08/07/2007 | | 290319DC3 | 9/24/2007 | (175,000.00) |
| ELSINORE VALLEY CALIF MUN WTR DIST CTFS PARTN ARCS-ELSINORE DUE 7/01/2035 | | 290319DB5 | 9/25/2007 | (300,000.00) |
| FRESNO CALIF JT PWRS FING AUTH LEASE REV ARCS-CAP IMPT DATED 03/03/2005 | | 358184HF9 | 9/25/2007 | (200,000.00) |

| | | | |
|---|---|---|---|
| CALIFORNIA STATEWIDE CMNTYS DEV AUTH REV ARCS-INDS-JOHN DATED 06/14/2006 | 1309112K5 | 9/27/2007 | (625,000.00) |
| SAN LEANDRO CALIF MULTIFAMILY REV VAR RT DMD MULTIFAM MTG REV BDS HAAS AVENUE APTS PROJ 1985 B | 798448AC0 | 10/1/2007 | (250,000.00) |
| ELSINORE VALLEY CALIF MUN WTR DIST CTFS PARTN ARCS-ELSINORE DUE 7/01/2035 | 290319DB5 | 10/2/2007 | (100,000.00) |
| WESTERN MUN WTR DIST FACS AUTH CALIF REV ADJ-SER A RMKT DATED 10/24/2002 | 95874QAB1 | 10/2/2007 | (25,000.00) |
| SAN BERNARDINO CNTY CALIF FLOOD CTL DIST JUDGMENT OBLIG DATED 05/29/2007 | 796860AB0 | 10/4/2007 | (925,000.00) |
| ELSINORE VALLEY CALIF MUN WTR DIST CTFS PARTN ARCS-SER B DATED 08/07/2007 | 290319DC3 | 10/5/2007 | (100,000.00) |
| PASADENA CALIF CTFS PARTN ARCS-CONFERENCE CTR PJ-SER B DATED 09/07/2006 | 702204LM8 | 10/5/2007 | (75,000.00) |
| FRESNO CALIF JT PWRS FING AUTH LEASE REV ARCS-CAP IMPT DATED 03/03/2005 | 358184HF9 | 10/9/2007 | (800,000.00) |
| CALIFORNIA HEALTH FACS FING AUTH REV INSD HOSP-MARSHALL DATED 03/25/2004 | 13033FRL6 | 10/10/2007 | (300,000.00) |
| SAN BERNARDINO CNTY CALIF FLOOD CTL DIST JUDGMENT OBLIG DATED 05/29/2007 | 796860AB0 | 10/11/2007 | (75,000.00) |
| ELSINORE VALLEY CALIF MUN WTR DIST CTFS PARTN ARCS-SER B DATED 08/07/2007 | 290319DC3 | 10/15/2007 | (325,000.00) |

\*Asterisk denoted Banc of America transactions.

| | | | |
|---|---|---|---|
| PASADENA CALIF CTFS PARTN ARCS-CONFERENCE CTR PJ-SER B DATED 09/07/2006 | 702204LM8 | 10/15/2007 | (925,000.00) |
| FRESNO CALIF JT PWRS FING AUTH LEASE REV ARCS-CAP IMPT DATED 03/03/2005 | 358184HF9 | 10/16/2007 | (250,000.00) |
| ELSINORE VALLEY CALIF MUN WTR DIST CTFS PARTN ARCS-SER B DATED 08/07/2007 | 290319DC3 | 11/9/2007 | (350,000.00) |
| FRESNO CALIF JT PWRS FING AUTH LEASE REV ARCS-CAP IMPT DATED 03/03/2005 | 358184HF9 | 11/20/2007 | (1,000,000.00) |
| CALIFORNIA STATEWIDE CMNTYS DEV AUTH REV ARCS-INSD-JOHN DATED 06/14/2006 | 1309112K5 | 11/21/2007 | (1,000,000.00) |
| CALIFORNIA INFRASTRUCTURE & ECONOMIC DEV BK REV WORKERS DUE 10/01/2017 | 13033WPE7 | 11/26/2007 | (1,000,000.00) |
| ELSINORE VALLEY CALIF MUN WTR DIST CTFS PARTN ARCS-ELSINORE DUE 07/01/2035 | 290319DB5 | 11/27/2007 | (650,000.00) |
| RANCHO CALIF WTR DIST FING AUTH REV ARCS-SER A DATED 06/23/2004 | 752111EY6 | 11/27/2007 | (25,000.00) |
| PASADENA CALIF CTFS PARTN ARCS-CONFERENCE CTR PJ-SER B DATED 09/07/2006 | 702204LM8 | 12/3/2007 | (100,000.00) |
| SAN BERNARDINO CNTY CALIF FLOOD CTL DIST JUDGMENT OBLIG DATED 05/29/2007 | 796860AB0 | 12/13/2007 | (575,000.00) |
| RANCHO CALIF WTR DIST FING AUTH REV ARCS-SER A DATED 06/23/2004 | 752111EY6 | 12/18/2007 | (975,000.00) |

\*Asterisk denoted Banc of America transactions.

| | | | | |
|---|---|---|---|---|
| NEWPORT BEACH CALIF REV ARS REV BDS HOAG MEM HOSP PRESBYTERIAN 2007E | * | 651785AQ0 | 12/21/2007 | (3,475,000.00) |
| CALIFORNIA INFRASTRUCTURE & ECONOMIC DEV BK REV VAR RATE REV BDS CAL INDPT SYS OPERATOR CORP 2007 SERIES A | * | 13033WXS7 | 12/24/2007 | (1,580,000.00) |
| ELSINORE VALLEY CALIF MUN WTR DIST CTFS PARTN ARCS-ELSINORE DUE 07/01/2035 | | 290319DB5 | 12/24/2007 | (1,000,000.00) |
| PASADENA CALIF CTFS PARTN ARCS-CONFERENCE CTR PJ-SER B DATED 09/07/2006 | | 702204LM8 | 12/24/2007 | (900,000.00) |
| RANCHO CALIF WTR DIST FING AUTH REV ARCS-SER A DATED 06/23/2004 | | 752111EY6 | 12/24/2007 | (1,000,000.00) |
| SOUTHERN CALIF PUB PWR AUTH PWR PROJ REV DUE 07/01/2018 | | 842475ZZ1 | 12/24/2007 | (1,000,000.00) |
| CALIFORNIA EDL FACS AUTH REV VAR RATE REV BDS UNIVERSITY OF SAN FRANCISCO SERIES 2006 | * | 130178FA9 | 12/26/2007 | (925,000.00) |
| SAN DIEGO CNTY CALIF PENSION OBLIG AUCTION REV BD 2002 B-3 | * | 797398BU7 | 12/26/2007 | (50,000.00) |
| WESTERN MUN WTR DIST FACS AUTH CALIF REV ADJ-SER A RMKT DATED 10/24/2002 | | 95874QAB1 | 12/26/2007 | (975,000.00) |
| ABAG FIN AUTH FOR NONPROFIT CORPS CALIF REV VAR REV BDS JEWISH CMNTY CTR ORANGE 2004 | * | 00037CFW5 | 12/27/2007 | (175,000.00) |
| CALIFORNIA ST DEPT WTR RES PWR SUPPLY REV VAR REV BDS 2005 G-5 | * | 13066YLP2 | 12/27/2007 | (100,000.00) |

*Asterisk denoted Banc of America transactions.

| | | | | |
|---|---|---|---|---|
| LONG BEACH CALIF UNI SCH DIST CTFS PARTN VAR COPS CAP IMPT REFING 2001 | * | 542436BQ2 | 12/27/2007 | (385,000.00) |
| LOS ANGELES CALIF CMNTY REDEV AGY MULTIFAMILY HSG REV VAR REF REV BDS PROMENADE TOWERS 2000 | * | 544393AT8 | 12/27/2007 | (280,000.00) |
| ORANGE CNTY CALIF HSG AUTH MULTIFAMILY APT DEV REV REV BDS LANTERN PINE PJ 1997 CC | * | 684263AA4 | 12/27/2007 | (150,000.00) |
| SACRAMENTO CNTY CALIF SANTN DIST FING AUTH REV VAR SUB LIEN REV BDS SACRAMENTO REGL SANITATION DIS 2000 C | * | 786134EQ5 | 12/27/2007 | (100,000.00) |
| SAN BERNARDINO CNTY CALIF FLOOD CTL DIST JUDGMENT OBLIG DATED 05/29/2007 | | 796860AB0 | 12/27/2007 | (1,000,000.00) |
| WESTERN PLACER CALIF UNI SCH CTFS PARTN COPS SCH FACS PROJS 2004 A | * | 959215AM6 | 12/27/2007 | (325,000.00) |
| SAN FRANCISCO CALIF CITY & CNTY REDEV AGY MULTIFAMILY REV | | 79765TBY0 | 1/14/2008 | (1,000,000.00) |
| CALIFORNIA INFRASTRUCTURE & ECONOMIC DEV | | 13033WXA6 | 1/16/2008 | (600,000.00) |
| OKLAHOMA ST STUDEN LN AUTH | | 679110CN4 | 1/18/2008 | (1,400,000.00) |
| BRAZOS HIGHER ED AUTH INC | | 10620NBU1 | 1/22/2008 | (1,000,000.00) |
| MISSOURIS HIGHER ED LN AUTH | | 606072GS9 | 1/22/2008 | (900,000.00) |

*Asterisk denoted Banc of America transactions.

| | | | |
|---|---|---|---|
| CALIFORNIA HEALTH FACS FING AUTH REV INSD HOSP MARSHALL | 13033FRL6 | 1/23/2008 | (800,000.00) |
| PENNSYLVANIA ST HIGHER ED ASST | 709163CZ0 | 1/28/2008 | (900,000.00) |
| NORTH CAROLINA ST ED ASST AUTH REV | 658262CY4 | 1/30/2008 | (700,000.00) |
| EDUCATIONAL FDG SOUTH INC TENN EDL LN REV AUCTION | 28148NBM4 | 2/4/2008 | (400,000.00) |
| NORTH CAROLIN A ST ED ASSISTANCE AU RV | 658262DK3 | 2/6/2008 | (100,000.00) |
| PANHANDLE-PLAINS TEX HIGHER ED AUTH INC STUDENT LN REV REV BDS 2004A-2 | 698476DS4 | 2/7/2008 | (600,000.00) |
| MISSISSIPPI HIGHER ED ASSISTANCE CORP STUDENT LN REV | 605354ES4 | 2/11/2008 | (1,100,000.00) |
| PENNSYLVANIA ST HIGHER ED ASST | 709163FA2 | 2/11/2008 | (2,000,000.00) |
| SAN FRANCISCO CALIF CITY & CNTY REDEV AGY MULTIFAMILI | 79765TBY0 | 2/15/2008 | (1,100,000.00) |
| JACKSONVILLE FLA PORT AUTH REV ARCS | 469466DW3 | 2/19/2008 | (1,000,000.00) |

## AUCTION RATE SECURITIES HELD AS OF MARCH 31, 2008

| SECURITY | | CUSIP | TRADE DATE | TOTAL FACE VALUE |
|---|---|---|---|---|
| ACCESS TO LNS FOR LEARNING STUDENT LN CORP CALIF REV SER DATED 06/11/2003 | | 00432MAX7 | 7/31/2007 | 1,000,000.00 |
| MISSOURI HIGHER ED LN AUTH STUDENT LN REV BDS 2004 G | * | 606072HQ2 | 12/21/07 | 1,450,000.00 |
| MISSOURI HIGHER ED LN AUTH STUDENT LN REV ARCS 2002 E | * | 606072GR1 | 12/21/07 | 1,000,000.00 |
| FLORIDA EDL LN MARKETING CORP EDL LN REV SER A-4 DATED 02/15/2002 | | 340640AG6 | 12/26/2007 | 1,000,000.00 |
| PENNSYLVANIA ST HIGHER ED ASSISTANCE AGY STUDENT LN REV DUE 06/01/2039 | | 709163ED7 | 12/26/2007 | 1,000,000.00 |
| MISSOURI HIGHER ED LN AUTH STUDENT LN REV ARCS 2002 E | * | 606072GR1 | 12/27/07 | 1,000,000.00 |
| ALABAMA HIGHER ED LN CORP STUDENT LN REV ARCS SR SER A-2 DATED 11/30/2006 | | 010305EV8 | 12/27/2007 | 1,000,000.00 |
| INDIANA SECONDARY MKT FOR ED LNS INC ED LN REV DUE 12/01/2038 | | 455900AR1 | 12/27/2007 | 1,000,000.00 |
| UTAH ST BRD REGENTS STUDENT LN REV CL II-SER V-2 DATED 04/09/2002 | | 917546FS7 | 12/27/2007 | 1,000,000.00 |
| KENTUCK Y HIGHER ED STUDENT LN  CORP | | 49130NBL2 | 1/2/2008 | 1,000,000.00 |

*Asterisk denoted Banc of America transactions.

| | | | |
|---|---|---|---|
| CENTRAL TEX HIGHER ED AUTH INC | 155488BW8 | 1/3/2008 | 1,000,000.00 |
| SECONDARY MARKET SVCS CORP HAWAII STUDENT LN | 813659AK5 | 1/3/2008 | 1,000,000.00 |
| NEW HAMPSHIRE HEALTH & ED FACS | 644614HH5 | 1/8/2008 | 300,000.00 |
| MISSOURI HIGHER ED LN AUTH STUDENT LN REV | 606072EX0 | 1/16/2008 | 900,000.00 |
| ACCESS GROUP INC NTS ARC AUCTION RATE | 00432CAR2 | 1/18/2008 | 2,000,000.00 |
| ACCESS GROUP INCO NTS AUCTION RATE | 00432CAR2 | 1/23/2008 | 1,000,000.00 |
| COLLEGE LOAN CORP TR I TXBL LOAN ABS | 194262DD0 | 1/28/2008 | 950,000.00 |
| NEW MEXICO EDL ASSISTANCE FNDTN ARS | 647110BY0 | 1/29/2008 | 900,000.00 |
| IOWA STUDENT LN LIQUIDITY CORP | 462590GC8 | 1/30/2008 | 700,000.00 |
| INDIANA SECONDARY MKT FOR ED | 455900BH2 | 2/12/2008 | 1,100,000.00 |

**LOANS SECURED BY ARS MARCH 3 AND 4, 2008:   $10,013,594.00 (as of 4/30/08)**

*Asterisk denoted Banc of America transactions.